939 P.2d 556

STATE of Idaho, Plaintiff–Respondent,

v.

Bradley MANTHEI, Defendant–Appellant.

No. 23035.

Supreme Court of Idaho.
Boise, December 1996 Term.

April 9, 1997.

Rehearing Denied July 10, 1997.

Van G. Bishop, Canyon County Public Defender; Maureen E. Cassidy, Deputy Public Defender, Nampa, argued, for appellant.

Hon. Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, argued, Boise, for respondent.

## ON REVIEW

SILAK, Justice.

This is an appeal from the district court's denial of appellant's motion to suppress methamphetamine evidence. Pursuant to a conditional plea of guilty to a charge of felony possession of methamphetamine, the appellant reserved the right to appeal the district court's order. On appeal, the Idaho Court of Appeals reversed the conviction. This Court granted the State's petition for review. We affirm the district court's order and judgment of conviction.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On January 6, 1994, Nampa police officer Edward Hofkins (Hofkins) approached a residence to serve a summons on a woman, "N.M.", he believed lived there. Hofkins was dressed in civilian clothes but was wearing his badge and gun and was carrying a police radio. Hofkins' knock on the door was answered by appellant Bradley Manthei (Manthei), who was a frequent visitor at the home and who had been an overnight guest the previous evening. Manthei identified himself

as Brad Martell and told Hofkins that N.M. had moved out two days before.

As Hofkins and Manthei spoke they were two and a half to three feet apart. The door was fully open and Manthei was standing in the threshold. Hofkins noticed the top of a syringe protruding from Manthei's shirt pocket. The plunger end of the syringe was the end Hofkins could see and the plunger was up. Hofkins testified that he believed the syringe was possibly drug related and that he was observing possible drug paraphernalia. He then called for backup. Hofkins thought that at this point Manthei became aware that the officer had seen the syringe. Hofkins then asked Manthei to step outside. Manthei did not respond but simply stared at the officer and turned his body in a position to try to shield the syringe. Hofkins then said, "Brad, step out." Manthei then yelled a profanity and attempted to slam the door on the officer. Hofkins stopped the door from closing, and again called for backup. He then entered the house in pursuit of Manthei who had headed toward the kitchen. Hofkins drew his gun as he approached the kitchen.

As Hofkins entered the kitchen, he observed that Manthei had the syringe down in the sink, with the plunger down, and appeared to be squirting the contents of the syringe into the drain. Also in the kitchen was a man whom Hofkins knew named D.L. Hofkins told Manthei to stop and drop the syringe and told D.L. not to move. Both men complied. Hofkins then had Manthei lie on the floor, spread eagle style, until the backup unit arrived at which time Hofkins placed Manthei under arrest and handcuffed him. Hofkins then searched Manthei's person and found another syringe, two plastic bags containing a white powdery substance and a marijuana pipe, and another plastic bag that Hofkins noticed between Manthei's legs, the contents of which later tested positive for methamphetamine.

Manthei was charged with felony possession of methamphetamine, and misdemeanors of possession of drug paraphernalia and resisting and obstructing an officer. Manthei pled not guilty and filed a motion to suppress the methamphetamine, alleging that the police had made a warrantless residential entry in the absence of exigent circumstances in violation of his rights under the Fourth Amendment to the United States Constitution. The district court denied the motion, ruling that Hofkins had probable cause to arrest Manthei for possession of drug paraphernalia and resisting and obstructing, and that when Hofkins followed Manthei into the house, he was in hot pursuit and there was an exigency arising from the risk of destruction of evidence.

Manthei thereafter entered into a plea agreement whereby he conditionally pled guilty to the charge of possession of methamphetamine and the other charges were dropped. He reserved the right to appeal the denial of his suppression motion. Manthei was sentenced to a fixed term of twenty months with credit for time already served.

On appeal, the Idaho Court of Appeals reversed the conviction. The court held that it did not believe "the existence of a partially hidden syringe is sufficient to constitute probable cause for an arrest under the circumstances of this case." The court noted that prior to calling for backup assistance, the only information Hofkins possessed was that Manthei had a syringe in his shirt pocket and there was no evidence at that point to indicate that the syringe was being used or was intended to be used in connection with controlled substances. With respect to whether there was a valid *Terry* stop, the court further held that when Hofkins ordered Manthei to step out of the house, the facts did not provide Hofkins with sufficient reasonable suspicion to detain Manthei for the purpose of investigating the possibility that a crime was being committed in his presence. Finally, the court held that no exigent circumstance existed to justify a warrantless residential entry because the suspected offense was not one of violence, citing *State v. Curl*, 125 Idaho 224, 869 P.2d 224 (1993).

The State petitioned for review. This Court granted review as to all issues.

## II.

### ISSUES ON REVIEW

The State raises the following issues on review:

(1) Whether the district court correctly held that the officer's entry into the house to complete the arrest or *Terry* stop of Manthei was consistent with Manthei's Fourth Amendment rights, in particular, (a) whether the officer initiated an arrest based on probable cause, or an investigative detention based on reasonable suspicion, before Manthei fled into the house, and (b) whether the officer acted properly in entering the house to complete the arrest or detention he had initiated.

## III.

## ANALYSIS

### A. Standard Of Review

This case is on review from the Court of Appeals. In such a case, this Court values the decision of the Court of Appeals for the insight it provides in addressing the issues on appeal. *State v. Roberts,* 129 Idaho 194, 923 P.2d 439, 442 (1996); *Spence v. Howell,* 126 Idaho 763, 768, 890 P.2d 714, 719 (1995). While this Court gives serious consideration to the views of the Court of Appeals, the Court reviews the opinion of the trial court directly. *State v. Roberts,* 923 P.2d at 442.

### B. The District Court Correctly Denied Manthei's Motion To Suppress The Methamphetamine Evidence.

#### 1. The detention of Manthei was a valid *Terry* stop.

The district court denied the motion to suppress on the basis that Hofkins had probable cause to arrest Manthei and that once Manthei had fled into the residence, "there was sufficient hot pursuit to justify any warrantless entry into the residence." The court ruled that there was a realistic expectation that delay would result in the destruction of evidence.

On appeal, the State argues that even if Hofkins did not have probable cause to arrest Manthei, he had a reasonable, articulable suspicion to detain Manthei pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *State v. Rawlings,* 121 Idaho 930, 829 P.2d 520 (1992), this

Court explained the *Terry* detention standard as follows:

> [N]ot all seizures of the person need be justified by probable cause to arrest for a crime; a police officer may, in appropriate circumstances and in an appropriate manner, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880. Such a seizure is justified under the Fourth Amendment if there is an articulable suspicion that the person has committed or is about to commit a crime.... Whether an officer had the requisite reasonable suspicion to conduct an investigatory stop is determined on the basis of the totality of the circumstances.

121 Idaho at 932, 829 P.2d at 522 (additional citations omitted).

In the present case, Hofkins observed a syringe protruding from Manthei's shirt pocket. The needle was pointed down and the plunger was up. In his affidavit in support of the State's opposition to the motion to suppress, Hofkins stated that he was a twenty-five year police veteran and had worked a number of drug cases, talked to hundreds of drug users and dealers over the years, and had experience in identifying drugs and drug paraphernalia. Accordingly, Hofkins testified that when he saw the syringe in Manthei's pocket, he believed that it was "possibly dope related" and that he was observing "potential drug paraphernalia," the possession of which is a misdemeanor under I.C. § 37-2734A. *See State v. Kysar,* 116 Idaho 992, 993, 783 P.2d 859, 860 (1989) (stating that "In determining whether there is probable cause for an arrest, an officer is entitled to draw reasonable inferences from the available information in light of the knowledge that he has gained from his previous experience and training.") We hold that based on these observations and because of his training and experience, Hofkins had a reasonable, articulable suspicion that a crime was being committed or was about to be committed in his presence and that he had the authority to detain Manthei under *Terry.*

Additionally, after Hofkins called for back-up on his radio and asked Manthei to step

outside, Manthei stared at Hofkins and turned his body to shield the syringe. When Hofkins made his explicit command—"Brad, step out"—Manthei yelled a profanity and started to slam the door. Thus, based upon the totality of the circumstances, we hold that whether or not probable cause existed, Hofkins, at the very least, had a reasonable, articulable suspicion for an investigative detention of Manthei.

## 2. Officer Hofkins legally entered the residence to complete the detention of Manthei under *Terry.*

Having determined that Hofkins validly initiated the *Terry* stop, we must next determine whether the officer could follow Manthei into the residence to complete the detention without violating the Fourth Amendment.

■ The United States Supreme Court has held that when an arrest has been initiated while a suspect is in a public place, such as a doorway, the suspect cannot thwart an otherwise proper arrest by retreating into a private place, such as a residence. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). In *Santana,* the police had probable cause to believe that the defendant had just sold heroin at her residence. When they arrived at her house, the defendant was standing in the open doorway. The police identified themselves and displayed their badges. As they approached, the defendant retreated into her house and the officers followed her inside and arrested her.

In the present case, as in *Santana,* Hofkins had a valid purpose for going to the residence, to serve the warrant on N.M. After he arrived, he developed a reasonable, articulable suspicion to warrant a *Terry* stop of Manthei. To permit Manthei to flee into the house at that point, when he knew he was being detained and was not free to go, would defeat the purpose of the *Terry* stop. *See State v. Zubizareta,* 122 Idaho 823, 827, 839 P.2d 1237, 1241 (Ct.App.1992) (noting that "In a *Terry* stop, the officer communicates to the detainee, either orally or through a show of force or authority, that he is not free to go about his business.") Further, we see no

reason to distinguish between entry into a residence to complete a *Terry* stop and entry to complete a probable cause-based arrest. In both cases the police have properly asserted their authority, and the assertion of authority should not be thwarted by a person's movement from the threshold into the house.

Manthei argues that entry into the residence was improper under *State v. Curl,* 125 Idaho 224, 869 P.2d 224 (1993). In *Curl,* this Court held that a warrantless entry into a residence that has as its only purpose the prevention of destruction of evidence could not be validly made unless the crime under investigation was a violent offense. 125 Idaho at 227, 869 P.2d at 227. The present case is distinguishable from *Curl* because that case did not involve a *Terry* stop at the threshold.

In *Curl* the police officer had not initiated a *Terry* stop prior to the warrantless entry into the apartment. There, the suspect exited an apartment and was walking down the hallway when he saw the police officer. Curl turned and ran back into the apartment. The police officer, present in the apartment building to serve a warrant on someone in another apartment, had seen a cloud of smoke emanating from the apartment Curl had just exited and had smelled the odor of marijuana. The officer followed Curl to the apartment, identified himself as a police officer, pushed the door open and entered. The officer never ordered Curl to stop and never let Curl know that he was under an investigative detention or that he was not free to run back into the apartment from where he had just come.

In the present case, Manthei was standing in the threshold of an open doorway when Hofkins developed the reasonable, articulable suspicion necessary to justify a *Terry* stop. He asked Manthei to step outside, at which point Manthei failed to comply and tried to shield the syringe from Hofkins' view. When Hofkins then ordered Manthei to step outside, Manthei swore at Hofkins and tried to slam the door. At that point in time Manthei was not free to close the door and go about his business.

For the foregoing reasons, we conclude that Hofkins' entry into the residence did not violate Manthei's Fourth Amendment rights, and that the district court correctly denied the motion to suppress the methamphetamine seized in the residence.

## IV.

## CONCLUSION

The order of the district court denying Manthei's motion to suppress the methamphetamine evidence, and the judgment of conviction, are affirmed.

TROUT, C.J., and SCHROEDER, J., concur.

JOHNSON, J., dissenting.

I respectfully dissent. In my view, the following opinion of the Court of Appeals correctly decided this case:

WALTERS, Chief Judge

Pursuant to a plea agreement, Bradley Manthei entered a conditional plea of guilty to the charge of possession of a controlled substance, a felony. I.C. § 37–2732(c)(1). Prior to the entry of the conditional plea, Manthei had filed a motion to suppress the controlled substance, methamphetamine. In the motion, he asserted that the police made a warrantless entry into a private residence in the absence of exigent circumstances and in violation of his Fourth Amendment right to be free from unreasonable searches and seizures, and, during this entry, a search disclosed the methamphetamine. After a hearing, the district court denied the motion. Manthei appeals from the order denying his motion to suppress. For the reasons set forth, we reverse the district court's order.

## I. FACTS AND PROCEDURAL BACKGROUND

In January 1994, Officer Edward Hofkins, a plain-clothed police officer, went to a residence in Nampa for the purpose of serving a summons on an individual named Neva Mil-

ler. Officer Hofkins knocked at the door and Bradley Manthei, who was an overnight guest at the residence, answered. During their conversation regarding Miller, the officer observed the top part of a syringe in Manthei's shirt pocket. Believing that the syringe may possibly be drug-related, Officer Hofkins immediately radioed for a backup unit in Manthei's presence, then instructed Manthei twice to step out of the house. Manthei refused, attempted to close the door, and ran into the house. The officer placed his foot in the doorway, preventing the door from closing, and pushed the door open. He entered the residence, running after Manthei. He found Manthei bent over the kitchen sink squirting the contents of the syringe into the drain area. Hofkins detained Manthei in the kitchen by having him lay face down on the floor. After the backup assistance arrived, Manthei was handcuffed, patted down for weapons and placed under arrest.[1] During the pat-down, the officers found on Manthei a second syringe and two small plastic bags containing powdery residue. A third bag containing a powdery substance was found on the kitchen floor where Manthei had been laying before the backup unit arrived. The contents of the bag found on the floor later tested positive for methamphetamine. Manthei was taken into custody and charged with possession of a controlled substance, with misdemeanor possession of drug paraphernalia, and with obstructing and delaying an officer.

Manthei filed a motion to suppress the methamphetamine. After a hearing, the district court denied the motion on the grounds that the substance was properly seized because the officers had probable cause to arrest Manthei for possession of drug paraphernalia, for resisting an arrest and for obstructing and delaying an officer by running from Officer Hofkins. Pursuant to a plea agreement, Manthei entered a conditional plea of guilty to the charge of possession of methamphetamine. He reserved the right to appeal the district court's denial of his suppression motion. It was also agreed that, subject to the district court's approval, a

1. Although Officer Hofkins later testified that Manthei was "arrested" at that point, the record does not disclose what Manthei was arrested for.

fixed sentence of twenty months would be imposed; the state would move to dismiss the misdemeanor charges, with the provision that those charges would be reinstated if Manthei prevailed on appeal; and if Manthei prevailed on appeal he could withdraw his plea of guilty. The district court agreed to the stipulated sentence and imposed a fixed sentence of twenty months.

Manthei's counsel subsequently failed to file a timely notice of appeal from the judgment. The state and Manthei later stipulated that Manthei was entitled to postconviction relief from this omission, and the district court reinstated Manthei's right to appeal. Manthei then appealed from the district court's order denying the motion to suppress.

## II. ISSUE

Manthei claims that the district court erred in denying his motion to suppress the methamphetamine. He argues that the determinative issue is whether the methamphetamine was seized after a valid warrantless "entry into a residence," not whether the substance was seized after a valid warrantless "arrest" as held by the district court. Manthei contends that the officer lacked justification to enter the private residence and, therefore, the entry and subsequent seizure of the methamphetamine deprived him of his right to due process and protection against unreasonable searches and seizures guaranteed under the United States and Idaho Constitutions.

## III. DISCUSSION

In its decision and order denying Manthei's motion to suppress, the district court concluded that this case involves a situation where there was a warrantless "arrest" followed by the flight into a private residence by the person subject to the arrest. The district court held that several factors established probable cause to arrest Manthei, and that an exigent circumstance allowed the officer to follow Manthei into the residence. The court determined that: (1) an arrest for possession of drug paraphernalia—a misdemeanor, I.C. § 37–2734A—was initiated after the officer observed the syringe, called for backup and asked Manthei to "step out" of the house; (2) Manthei acted "violently" when he was asked to step out of the house; and (3) once Manthei fled, the officer had probable cause to arrest him for resisting the arrest and obstructing and delaying an officer. Furthermore, the court held that the officer's "realistic expectation that delay would result in the destruction of the syringe or other evidence," was sufficient to justify the "hot pursuit," given that Manthei was standing in the doorway of the residence, a public place.

Manthei argues that the issue in this case is whether justification existed for a warrantless "entry of a private residence," not whether probable cause existed for a warrantless *arrest*. He contends that neither probable cause nor an exigent circumstance existed to justify the officer's warrantless entry. First, Manthei asserts that Officer Hofkins could not make an arrest based on probable cause merely upon the suspicion or possibility that the syringe which the officer saw in Manthei's pocket could have been drug-related. Second, Manthei contends that, according to our Supreme Court's decision in *State v. Curl*, 125 Idaho 224, 869 P.2d 224 (1993), Officer Hofkins' pursuit of Manthei in order to prevent the "possible destruction of evidence" is not sufficiently exigent to justify the warrantless entry and subsequent search of a private residence because the underlying crime charged—possession of drug paraphernalia—was of a nonviolent nature. *Id.* at 225, 869 P.2d at 225. *See also Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (mere threat of destruction of evidence when offense was "relatively minor" did not justify a warrantless entry into a residence). Finally, Manthei argues that Officer Hofkins' entry into the residence was invalid because the officer failed to follow I.C. § 19–611 which requires an officer to demand admittance and to explain the purpose for which admittance is desired, before entering a house to make an arrest.[2]

2. Idaho Code § 19–611 provides:

**Breaking doors and windows.**—To make an arrest, if the offense is a felony, a private person,

243

The state argues that Officer Hofkins had probable cause for the warrantless arrest, or at least had reasonable suspicion for the initiation of a *Terry* stop[3] because of the existence of the syringe and the officer's belief that Manthei was in possession of drug paraphernalia. The state contends that the officer's initiation of Manthei's detention was proper.

After reviewing the record, we believe that the threshold question is whether the existence of the syringe in Manthei's shirt pocket, of which only a portion was in the officer's view, constituted probable cause for a warrantless arrest. Ordinarily, a peace officer may make a warrantless arrest for a misdemeanor committed in the officer's presence and for a felony when the officer has reasonable cause for believing the person arrested to have committed the felony. I.C. § 19–603; *State v. Pannell,* 127 Idaho 420, 425, 901 P.2d 1321, 1326 (1995). Section 37–2740(a)(3) of the Idaho Uniform Controlled Substances Act further provides that a peace officer may "[m]ake arrests without [a] warrant for any offense under this act committed in his presence, or if he has probable cause to believe that the person to be arrested has committed or is committing a violation of this act which may constitute a felony or a misdemeanor." Our Supreme Court in *State v. Kysar,* 116 Idaho 992, 783 P.2d 859 (1989), provided the following analysis for determining the existence of probable cause for a warrantless arrest:

> Reasonable or probable cause for an arrest exists where the officer possesses information that would lead a person of ordinary care and prudence to believe or entertain an honest or strong suspicion that the person arrested is guilty. In evaluating a police officer's determination of probable cause in the field, a court must take into account "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." In determining whether there is probable cause for an arrest, an officer is

entitled to draw reasonable inferences from the available information in light of the knowledge that he has gained from his previous experience and training.

*Id.* at 993, 783 P.2d at 860 (citations omitted). *See also State v. Quimby,* 122 Idaho 389, 391, 834 P.2d 906, 908 (Ct.App.1992); *State v. Webb,* 118 Idaho 99, 101–02, 794 P.2d 1155, 1157–58 (Ct.App.1990).

On suppression questions, our review of a probable cause determination is bifurcated. *Quimby, supra.* We defer to the lower court's findings of fact when supported by substantial evidence. *Id.* However, we exercise *de novo* review over the question whether the facts as found are sufficient to constitute probable cause. *Id.*

Here, the record shows that Officer Hofkins' sole reason for approaching the residence was to serve a summons on Neva Miller. After Manthei answered the door and informed Hofkins that Miller had moved out two days earlier, a fact which was later proven to be false, the officer no longer had a reason to remain on the premises. It was during his conversation with Manthei that Officer Hofkins noticed the syringe on Manthei's person. At the preliminary hearing, Hofkins provided the following testimony as to his reasons for suspecting that Manthei was committing a crime in his presence:

Q [PROSECUTING ATTORNEY]: Okay. When you made contact with Mr. Manthei, did you tell him why you were there?

A [OFFICER HOFKINS]: Yes.

Q: What precisely did you tell him?

A: First off, I asked him if—Neva Miller was there. She—He told me that at that time, that she had moved out two days prior.

Q: Now, while you were talking with him, did you notice anything that you considered to be of an evidentiary nature on or about this person?

A: Yes.

———

if any public offense, a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which there is reasonable ground for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.

3. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Q: What did you see?

A: As we were talking, we were, oh, maybe approximately two and a half to three feet apart. I could see a syringe in his right shirt pocket. The plunger on the syringe was up.

Q: Now, what did that tell you in your own mind?

A: Well, that he had a syringe in his pocket and [that it was] possibly dope related.

Q: Now, with regard to that syringe, have you dealt with drug cases before?

A: Yes.

Q: Do you recognize syringes as potential drug paraphernalia?

A: Yes.

Furthermore, Officer Hofkins testified that after he noticed the syringe, and believing that it was possibly drug-related, he radioed for a backup unit in Manthei's presence. The officer also testified that he pursued Manthei into the residence in order to prevent the "destruction of evidence." The officer did not testify that he intended to arrest Manthei upon observing the syringe. In response to defense counsel's inquiry whether the syringe was ever tested for the presence of any narcotics, Officer Hofkins said "Not that I'm aware of."

We do not believe that the existence of a partially hidden syringe is sufficient to constitute probable cause for an arrest under the circumstances of this case. Prior to calling for backup assistance, the only information the officer possessed was that Manthei had a syringe in his shirt pocket. Instead of inquiring about the contents of the syringe or its purpose, the officer immediately called for backup based upon his belief that the syringe was possibly drug-related. There was absolutely no evidence before the police officer at that point to indicate that the syringe was being used or was intended to be used in connection with controlled substances. We conclude that a person of ordinary care and prudence could not have entertained a strong

suspicion that, based on the facts of this case, probable cause existed for an arrest.[4]

Next, we address the state's alternative argument that sufficient reasonable suspicion existed for the initiation of a valid *Terry* stop. When a police officer conducts a *Terry* stop, the investigatory seizure or stop must be justified by a reasonable, articulable suspicion on the part of the police that the person to be seized or stopped has committed or was about to commit a crime. *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992); *State v. Fry*, 122 Idaho 100, 103, 831 P.2d 942, 945 (Ct.App.1991); *State v. Knapp*, 120 Idaho 343, 347, 815 P.2d 1083, 1087 (Ct.App. 1991). Whether the officer had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances. *Rawlings, supra; State v. Zubizareta*, 122 Idaho 823, 828, 839 P.2d 1237, 1242 (Ct.App.1992). Based upon the "whole picture," the detaining officer must have a particularized and objective basis for suspecting the person stopped of criminal activity. *Fry, supra.* We conclude that, when Hofkins ordered Manthei to step out of the house, the facts of this case, viewed from an objective basis and in their totality, did not provide Hofkins with sufficient reasonable suspicion to detain Manthei for the purpose of investigating the possibility that a crime—possession of drug paraphernalia— was being committed in his presence.

Even aside from the probable cause and reasonable suspicion questions, there was no evidence of an exigent circumstance necessary to justify a warrantless residential entry. We agree with Manthei that the facts of this case are similar to the facts presented in *Curl*, 125 Idaho at 224, 869 P.2d at 224. In *Curl*, the officer entered an apartment building to serve an arrest warrant on a second-floor resident. The officer observed Jackie Carl Curl come out of another apartment on the second floor, followed by a puff of white smoke emanating from the interior of the apartment. The officer recognized the odor coming from the apartment as that of freshly

4. The state argues that the officer's entry into the house was permissible under *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). However, *Santana* is distinguishable because the officers in that case had probable cause to arrest the defendant prior to locating the defendant at her home.

burning marijuana. Curl walked down the hallway toward the officer. When Curl was within ten feet of the officer, he stopped abruptly, hesitated, spun around and ran back into the apartment from which he had emerged. The officer ran after Curl, identified himself as a police officer, paused briefly, pushed the door open and entered the apartment. Several people were inside, including Curl and Kimberly McCurdy. The officer seized certain evidence and cited Curl and McCurdy with possession of marijuana and possession of drug paraphernalia, both misdemeanors.

Curl and McCurdy filed motions to suppress all evidence obtained after the officer entered the apartment, contending that the entry was illegal. *Id.* at 225, 869 P.2d at 225. During the hearing, the officer testified that he was experienced in identifying marijuana and that based upon his training and experience, he was concerned that the evidence would be destroyed if he waited to get a warrant. The Supreme Court held that the threat of destruction of evidence was present but then found, in light of the fact that the crimes of which Curl and McCurdy were suspected—possession of marijuana and possession of drug paraphernalia—were not violent offenses, the state had not carried its burden of demonstrating exigent circumstances necessary to justify a warrantless residential entry.

Here, even assuming Manthei was prohibited from interfering with the officer's attempt to investigate further, and assuming probable cause for a misdemeanor arrest for possession of drug paraphernalia or reasonable suspicion for a *Terry* stop, under *Curl* the officer was not justified in pursuing Manthei into the interior of the house because the suspected offense was not one of violence. The district court erred in ruling to the contrary.

Having determined that the district court erred in denying Manthei's motion to suppress, we do not reach Manthei's remaining arguments for reversal of the district court's order.

## IV. CONCLUSION

For the reasons stated, we conclude that probable cause did not exist for the officer's warrantless arrest, nor did reasonable suspicion exist for the initiation of a valid *Terry* stop. Pursuant to *State v. Curl,* the officer was not justified in entering the residence occupied by Manthei to arrest him, without a warrant, for nonviolent possession of drug paraphernalia. We therefore reverse the district court's order denying Manthei's motion to suppress. The case is remanded for the purpose of allowing Manthei to withdraw his plea of guilty pursuant to the plea agreement. Judges LANSING and PERRY, CONCUR.

McDEVITT, J., joining in dissent.