967 P.2d 724

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Charles S. HINSON, Defendant–Respondent.**

No. 23949.

Supreme Court of Idaho,
Coeur d'Alene, September 1998 Term.

Oct. 22, 1998.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Bruce H. Greene, Sandpoint, for respondent.

JOHNSON, Justice.

This is a criminal case in which the trial court suppressed evidence obtained by law enforcement officers who made a warrantless entry of the defendant's residence. We conclude that the trial court should not have suppressed the evidence on the ground stated by the trial court.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

On the evening of April 5, 1997, a dispatcher (the dispatcher) for the City of Sandpoint received one or more calls (the call or calls) from the same address on the 911 line. In each case, the caller hung up before speaking to the dispatcher. The dispatcher notified the Bonner County Sheriff's department about the call or calls. The sheriff's department dispatched a deputy sheriff (the deputy) to the address from which the call or calls were made. When the deputy arrived at the address to investigate, he could see Charles S. Hinson (Hinson) through a window in the residence. The deputy approached the front door of the residence and knocked. Hinson opened the door. The deputy observed a straw and a lighter in Hinson's hand. The deputy recognized the straw and lighter "as what controlled substances are packaged in." The deputy told Hinson to drop the items in his hand and step back, which Hinson did. The deputy then entered the house. While the deputy waited for another officer to arrive, he questioned Hinson about the call or calls and about what was in the straw. Hinson told the deputy that the straw contained drugs.

A sergeant (the sergeant) from the sheriff's office arrived at the scene at the same time as a woman (the woman) who resided with Hinson. The sergeant spoke with the woman outside the residence and then entered the residence without any objection from the woman. The sergeant saw the straw and lighter and asked Hinson what was in the straw. Hinson replied that it contained "speed." The deputy and the sergeant (the officers) picked up the lighter and the straw. The sergeant later testified that he then read Hinson his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that Hinson waived his right to an attorney and continued to speak with the officers, and that in response to questioning from the officers, Hinson indicated that there was more drug paraphernalia in his bedroom and directed the officers where to find it. Once that evidence was obtained, the officers arrested Hinson for felony possession of methamphetamine and placed Hinson in handcuffs. The report filed in the sheriff's office by the sergeant stated, contrary to his testimony, that the search occurred first, followed by Hinson's

**112**

arrest, handcuffing, and then a reading of Hinson's *Miranda* rights.

Hinson asked the trial court to suppress his statements made to the officers and the evidence obtained from his residence. The trial court suppressed the statements and evidence on the ground that under the totality of the circumstances, the deputy had no justification for entering Hinson's residence. The State appealed.

## II.

## THE DEPUTY HAD AUTHORITY TO ENTER HINSON'S RESIDENCE.

The State asserts that the trial court should not have suppressed the evidence on the ground that the deputy had no authority to enter Hinson's residence. We agree.

During the hearing on the motion to suppress, the officers testified, without objection, that calls on the 911 line received by the dispatcher can be traced to the dialing phone. The sergeant testified, as follows: "[W]e are sworn to answer calls for service and in our policies it states that we will respond and answer calls to service and 911 is just a call for service for us."

In *State v. Manthei*, 130 Idaho 237, 939 P.2d 556 (1997), the Court considered the actions of a law enforcement officer who went to a residence to serve a warrant. In attempting to serve the warrant, the officer learned that the subject of the warrant was no longer at the residence, but noticed the top of a syringe protruding from the shirt pocket of an individual who answered the door at the residence. The officer then asked the individual to step outside. The individual attempted to slam the door, but the officer stopped the door from closing and entered the residence to pursue the individual. On appeal, this Court stated that the officer "had a valid purpose for going to the residence" and after arriving "developed a reasonable, articulable suspicion to warrant a *Terry [v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] stop of [the individual]."

*Id.* at 240, 939 P.2d at 559. The Court then concluded: "To permit [the individual] to flee into the house at that point, when he knew he was being detained and was not free to go, would defeat the purpose of the *Terry* stop." *Id.*

Based on *Manthei*, the call or calls which were traced to Hinson's residence gave the deputy "a valid purpose for going to the residence." By recognizing the items in Hinson's hand "as what controlled substances are packaged in," the deputy developed a reasonable, articulable suspicion to warrant a *Terry* stop of Hinson while Hinson was standing in the threshold of the open doorway to his residence. Because the deputy initiated a *Terry* stop prior to the warrantless entry into Hinson's residence, the deputy did not violate Hinson's Fourth Amendment rights by entering the residence to perform a further investigation. *Id.* at 240–41, 939 P.2d at 559–60.

Hinson has not asserted that the Idaho Constitution grants additional protection over and above the Fourth Amendment. Therefore, we need only address the Fourth Amendment.

We note that both the State and Hinson have stated that it is inappropriate for us in this appeal to address the *Miranda* issues.

## III.

## CONCLUSION

We vacate the trial court's suppression of the evidence and remand the case to the trial court for further proceedings.

TROUT, C.J., and SILAK, SCHROEDER and WALTERS, JJ., concur.