103 P.3d 430

STATE of Idaho, Plaintiff–Respondent,

v.

Brian J. MALAND, Defendant–Appellant.

No. 29136.

Supreme Court of Idaho,
Boise, April 2004 Term.

Nov. 24, 2004.

John M. Adams, Kootenai County Public Defender, Coeur d'Alene, for appellant. John M. Adams argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

**THIS IS A SUBSTITUTE OPINION.**

**THE OPINION ISSUED SEPTEMBER 1, 2004, IS HEREBY WITHDRAWN.**

BURDICK, Justice.

Brian Maland seeks review of the magistrate's denial of his motion to suppress, which the district court affirmed in an intermediate appeal. This Court holds that police may not make a warrantless, nonconsensual entry into a residence in order to effectuate a *Terry* stop,[1] and reverses the denial of the motion to suppress.

## FACTS AND PROCEDURE

Responding to a noise complaint from an anonymous caller, two officers went to a home located in Coeur d'Alene to investigate. At the door of the home, the officers could hear music, which at that time was not excessively loud. The officers knocked and Maland answered the door. He admitted to the

---

1. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

officers that he had earlier been playing loud music. He was not cited for a noise infraction. The officers asked Maland to produce identification and to disclose whether he owned the home. Maland responded that he had no identification with him; he gave his name as Stephen Maland (who later was revealed to be his brother); and he claimed he was staying at the house whose owner, he said, was at a bar. Officer Snyder became suspicious that Maland was not being truthful, and when Maland tried to end the encounter with the police by closing the door, Officer Snyder blocked the door by placing her foot between the doorjamb and the door while she and another officer pushed against the door. As a result of this activity, Maland relented, came out of the house, revealed his true identity to the officers, and produced his driver's license. After getting the driver's license from Maland, an officer called dispatch and received information back that Maland had an active bench warrant for failure to appear. The officers arrested Maland on the warrant.

Maland was then charged with possession of a suspended driver's license and obstructing an officer. He filed a motion to suppress all the evidence obtained before, during and after the "stop," claiming a violation of his constitutional rights by the unlawful warrantless entry of the officers into his home. After a hearing and consideration of the parties' briefs, the magistrate denied the motion.

Maland then pled guilty to the possession charge in exchange for dismissal of the obstruction charge, reserving the right to appeal the order denying the suppression motion.

The district court on review of the magistrate's order denying the motion to suppress recognized the constitutional prohibition against law enforcement's warrantless entry of a home for purposes of making contact with a defendant without probable cause and exigent circumstances. See *Kirk v. Louisiana*, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (per curiam); *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The district court, however, analyzed the case under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which justifies a limited detention for the purposes of conducting an investigation such as, in this case, a noise complaint. The district court concluded the seizure that took place "fell short of having entered into the home to either attempt to arrest or to remove Mr. Maland from the home." Considering *State v. Manthei*, 130 Idaho 237, 939 P.2d 556 (1996), the district court concluded that the officers had reasonable, articulable suspicion to investigate the noise complaint justifying a limited intrusion. Agreeing with the magistrate that the officers did not effectuate an entry, although they did block the door for purposes of continuing the *Terry* stop, the district court concluded that the ultimate arrest took place outside. The district court affirmed the magistrate's denial of the motion to suppress. Maland filed a timely appeal from the district court's decision. We reverse.

## ISSUES ON APPEAL

1. Did the magistrate improperly hold the police may make a warrantless, nonconsensual entry into a residence to effectuate a *Terry* investigative stop?

2. Is the magistrate's finding that Maland was in a "public place" when the officers seized him supported by the evidence and law?

3. Did the magistrate err in concluding that the officers had made no "entry" into Maland's home?

4. Did the magistrate err in concluding that the officers had obtained Maland's suspended driver's license with Maland's voluntary consent?

## STANDARD OF REVIEW

■■■■ When this Court reviews an appellate decision of a district court, we examine the trial court record "independently of, but with due regard for, the district court's intermediate appellate decision." *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993). In reviewing an order granting or denying a motion to suppress evidence, we defer to the trial court's factual findings unless they are clearly erroneous.

*Id.* However, free review is exercised over the trial court's determination as to whether, based on those factual findings, constitutional requirements have been met. *State v. Medley,* 127 Idaho 182, 185, 898 P.2d 1093, 1096 (1995); *State v. Weber,* 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989).

## ANALYSIS

### I. There was no valid *Terry* stop.

■ The question the Court must address is whether the initial contact between the officers and Maland to investigate the noise complaint could be transformed into a warrantless entry in violation of his right to be free from unreasonable government intrusion.

Maland argues that the magistrate applied the wrong legal standard to the officers' conduct by following *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), instead of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and its progeny, which established the rule that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana,* 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002), *citing Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Maland also argues that *State v. Manthei,* 130 Idaho 237, 939 P.2d 556 (1997), does not govern, as the facts of this case are distinguishable.

The Idaho Supreme Court has explained the *Terry* detention standard as follows:

[A] police officer may, in appropriate circumstances and in an appropriate manner, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880 [20 L.Ed.2d at 906]. Such a seizure is justified under the Fourth Amendment if there is an articulable suspicion that the person has committed or is about to commit a crime.... Whether an officer had the requisite reasonable suspicion to conduct an investigatory stop is determined on the basis of the totality of the circumstances.

*State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992).

■ Pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police officers may seize someone—make a *Terry* stop—for the purpose of investigating possible criminal behavior, even though there is no probable cause to make an arrest, if there is an articulable suspicion that the person has committed or is about to commit a crime. *State v. Hankey,* 134 Idaho 844, 11 P.3d 40 (2000). A seizure does not occur, however, merely because an officer talks with someone. As the United States Supreme Court stated in *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889, 905 n. 16 (1968), "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." A necessary condition for there to be a seizure effected through a "show of authority" is words and/or actions by a police officer that would have conveyed to a reasonable person that he or she was being ordered to restrict his or her movement. *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). An oral command constituting a show of authority does not constitute a seizure unless the person yields to that command. *Id.*

It is instructive to keep in mind the original facts of the *Terry* case when analyzing Maland's case.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Detective McFadden, an officer of thirty-nine years, was patrolling in plainclothes in downtown Cleveland. He saw two men on a street corner and noticed them milling around. He observed these two strangers (Mr. Terry and another man) walking to a store, peering into it briefly, walking by it a short way, turning around, and then returning to steal another look in the store. He watched this activity happen *twenty-four times.* During one of these routes, they were joined by another man who then left

swiftly. The original two then started to leave the area and rejoin the third man a couple of blocks from the store. Fearing they were "casing a job, a stick-up," Detective McFadden confronted them by asking their names. They mumbled something, at which time he frisked Terry and found a weapon; and after returning to the store with the three he frisked the others and found another gun. Terry and another individual were charged with unlawful possession of a firearm. Compare this with today's case, where law enforcement go to a home for a loud noise, hear no loud noise, continue to the defendant's door and when they become suspicious in talking with him—about what we're not sure—enter his home.

■ In this case, the officers walked up to the front door of Maland's residence, knocked on the door, and talked with him after he opened the door. Such conduct did not constitute a seizure of Maland. Law enforcement officers do not seize someone merely by approaching the person in a public place, by asking if the person is willing to answer questions, and by then questioning the person. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Prior to Maland attempting to close his door, the officers had not seized, or even attempted to seize him. There were no words or actions by the police that objectively would have conveyed to Maland that he was being ordered to restrict his movement. A person who is simply being questioned by police, prior to any seizure, is free to decline to listen to the questions and to go his or her own way. *Id.*

The officers testified at the suppression hearing that they did not make an arrest nor issue a citation during this initial contact. Thus, the Court concludes that up to this point, Maland was not seized. *See State v. Zubizareta*, 122 Idaho 823, 827, 839 P.2d 1237, 1241 (Ct.App.1992) ("In a *Terry* stop, the officer communicates to the detainee, either orally or through a show of force or authority, that he is not free to go about his business."). The magistrate did not issue written findings of fact on the motion to suppress, but stated them orally on the record. The magistrate's findings do not show

that any *Terry* stop was made prior to the officer's entry into Maland's residence. The two officers went to Maland's residence to investigate a noise complaint. The magistrate found:

> They [the officers] went, knocked on the door, he [Maland] responded, opened the door. They began to talk to him about the noise. He admitted that he had been playing his stereo loud earlier. During this conversation he subsequently apparently lost patience, uh, stepped back into the residence, attempted to close the door. One of the officers placed her foot into the door, prohibiting the door from going all the way closed.

The magistrate also noted that the female officer testified that she believed Maland "was not detained, he was free to go into the house." The magistrate found, "I think the Officers had a right to detain him on the porch, although the female Officer testified she didn't believe she did. Because he had admitted playing his stereo loudly earlier, she had a right to investigate that." The magistrate concluded:

> Perhaps the, uh, foot in the door, holding it a door—ajar prolonged the contact, but I believe it was a legitimate *Terry*, uh, inquiry right for a brief detention for investigation. Otherwise, a person could always step into the house during a *Terry*, uh, investigation and shut the door and be done with it. I don't think that's what the law is. So, the motion is denied.

The magistrate's findings do not support his conclusion that the officers made a *Terry* stop. He erred by equating the right to make a *Terry* stop with actually making one.

## II. There was an entry into Maland's residence.

■ The magistrate also stated, "Here I find that there was no entry [into Maland's residence]." That finding is clearly erroneous. The female officer inserted her foot into the threshold far enough to prevent Maland from closing his front door. That constituted an entry into Maland's residence under the Fourth Amendment.

■ As the United States Supreme Court stated in *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639, 653 (1980) (citation omitted):

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their ... houses ... shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

It was not necessary for the officer's entire body to cross the threshold in order to constitute an entry under the Fourth Amendment. "[A]ny physical invasion of the structure of the home, 'by even a fraction of an inch,' [i]s too much." *Kyllo v. United States*, 533 U.S. 27, 37, 121 S.Ct. 2038, 2045, 150 L.Ed.2d 94, 104 (2001).

■ Once Maland attempted to terminate the conversation by closing the door, the female officer intruded into his residence in order to seize him by inserting her foot through the threshold to keep him from closing the door. That intrusion into Maland's residence was the officers' first show of authority. Police may not intrude into a residence in order to effectuate a *Terry* stop. If police may not make a warrantless and nonconsensual entry into a suspect's residence in order to make a routine felony arrest, *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), they certainly may not do so in order to effectuate a *Terry* stop.

### III. Maland was in a private place when law enforcement encountered him.

■ The district court relied upon *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) to authorize the officers to continue into Maland's home to further the *Terry* stop. In *United States v. Santana, supra*, the Supreme Court held that police could arrest without a warrant a person standing in the open doorway to her home because the open doorway was a public place. In *Santana*, police saw the defendant standing in the open doorway to her home shortly after a heroin transaction in which they had probable cause to believe she had participated. When police approached, the defendant fled into her home, where police entered and completed her arrest. The Supreme Court concluded that the police sought to arrest her in a public place (her porch). "She was not in an area where she had any expectation of privacy.... She was not merely visible to the public but was exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* at 42, 96 S.Ct. at 2409, 49 L.Ed.2d at 305. Further, the entry into the defendant's home to complete the arrest was justified by an exigent circumstance: the officers' "hot pursuit" of a fleeing felon. *See id.* at 42–43, 96 S.Ct. at 2409–2410, 49 L.Ed.2d at 305.

■ "A person does not abandon this privacy interest in his home by opening his door from within to answer a knock." *United States v. Berkowitz*, 927 F.2d 1376, 1387 (7th Cir.1991). In the case where the police enter a person's home, without his/her consent, before announcing their authority to arrest.

> the arrestee has not forfeited his privacy interest in the home; he has not relinquished his right to close the door on the unwanted visitors. See *McCraw*, 920 F.2d at 229; see also *McKinney v. George*, 726 F.2d at 1188 (suggesting that a person answering the police's knock may retreat into his home, and that police may not then enter without a warrant to arrest him); *LaFave, supra*, § 6.1(e) at 591.

927 F.2d at 1387.

Contrary to Santana, the officers had no probable cause to arrest Maland, for a felony

either when he was inside the house or when he opened the door, and there were no exigent circumstances justifying entrance without a warrant. *Santana* does not sanction the entry into Maland's home. 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

The State argues that the protections afforded by the Fourth Amendment do not prevent an officer from making a warrantless, nonconsensual entry into a suspect's home to effectuate a *Terry* stop, which began at the threshold of the suspect's home. Relying on the Supreme Court's decision in *Santana,* this Court in *State v. Manthei,* 130 Idaho 237, 939 P.2d 556 (1997), held that an officer's warrantless entry into a defendant's residence in order to complete the *Terry* stop did not violate the defendant's Fourth Amendment rights. According to the Court in *Manthei,* there was "no reason to distinguish between entry into a residence to complete a *Terry* stop and entry to complete a probable cause-based arrest." *Id.* at 240, 939 P.2d at 559. *Manthei* was wrongly decided and must be overruled. *Manthei* has led to the erroneous argument that law enforcement officers may enter a home to effectuate a *Terry* stop when there is no probable cause for an arrest, nor exigent circumstances including but not limited to, officer or other's safety. *See Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *State v. Harwood,* 94 Idaho 615, 495 P.2d 160 (1972). For the same reasons, *State v. Hinson,* 132 Idaho 110, 967 P.2d 724 (1998) was also wrongly decided and must be overruled.

### IV. Unlawful entry and arrest not cured by attenuation or independent grounds for arrest.

█ The State urges that the magistrate's order denying suppression can be affirmed on alternative grounds, based on the outstanding bench warrant for Maland's arrest that subjected Maland to arrest even before the officers arrived to investigate the noise complaint. Citing *State v. Schwarz,* 133 Idaho 463, 988 P.2d 689 (1999), the State claims that the warrant provides an independent judicial determination of probable cause, and that the Court rejected the defendant's claim that the outstanding warrant was an "after-the-fact justification for the search." *See Schwarz* at 468, 988 P.2d at 694. As further support, the State cites to *United States v. Green,* 111 F.3d 515 (7th Cir.1997), where the court held that an outstanding arrest warrant gives the officer independent probable cause to arrest such that, had the officers acted unlawfully, the warrant would constitute an intervening circumstance dissipating the taint of the illegality.

█ It is well-established law that a judicial determination of probable cause focuses on the information and facts the officers possessed at the time. In *Schwarz,* the facts known to Officer Poulter were that Schwarz had said there was an outstanding warrant for his arrest, and that Schwarz appeared nervous and exhibited the "fight or flight" stance after he got out of the car. 133 Idaho at 465, 988 P.2d at 691. In fact, a probable cause determination had already been made by a neutral, detached magistrate, although the dispatcher had given Officer Poulter incorrect information. *Id.*

The Court upheld the pat down search and the seizure of drugs found during the search that occurred prior to the officer's confirmation of the existence of a outstanding warrant. *Id.* at 468, 988 P.2d at 694. Unlike *Schwarz,* Maland did not volunteer that his license was suspended during the initial police contact and any such fact was irrelevant to the noise complaint.

Relying on *Green,* 111 F.3d 515, the State argues that even if the suspended license was seized as the result of an illegal entry into the Defendant's home, the seizure itself was sufficiently attenuated "or cured" from the earlier misconduct to permit its use against Maland. Although *U.S. v. Green* is not binding authority, we will address the State's argument.

In *Green,* the defendant parked his car in a driveway and the police illegally seized him by positioning their car to block the driveway so that the defendant could not drive away. The police wanted to question the defendant about the whereabouts of a third person they were seeking. After obtaining identification from the defendant and his passenger, the officers learned there was a warrant for the

passenger's arrest. They arrested the passenger on that warrant and then searched the car incident to that arrest, discovering crack cocaine and a firearm in the car. The defendant was later charged with possession of the cocaine with the intent to distribute it, carrying a firearm while engaging in drug trafficking, and possession of a firearm by a felon. The district court denied the defendant's motion to suppress, and he was convicted on two of the charges and sentenced. He then appealed, contending that the crack cocaine and firearm should have been suppressed because they were the fruits of the illegal stop. The court of appeals held that the taint of the illegal stop had dissipated, primarily because the discovery of the arrest warrant for the passenger and his lawful arrest prior to the search of the car was an intervening circumstance. In *Green*, the arrest warrant was discovered and executed before the officers found the evidence sought to be suppressed. In the instant case, the evidence (Maland's driver's license) was seized before the police discovered Maland's arrest warrant. Thus, the discovery of the arrest warrant cannot be an intervening circumstance because it occurred after the wrongful seizure of the evidence. The Court in *Green* did not hold that the discovery of the arrest warrant cured the officer's prior unlawful conduct, and we likewise do not so hold.

## CONCLUSION

The Court concludes a *Terry* stop was not effectuated in this case. A *Terry* stop may not be effectuated by a warrantless, nonconsensual entry into a residence or place of business without probable cause for a felony and exigent circumstances.

The Court finds without a warrant or probable cause for a felony and exigent circumstances, the officers' inserting of her foot into the doorway constituted an illegal entry. Maland's production of his driver's license is a fruit of that illegal entry and is suppressed. The Court reverses the district court's denial of defendant's motion to suppress and remands for further proceedings.

Chief Justice SCHROEDER and Justices TROUT, KIDWELL and EISMANN, concur.

