155 P.3d 1157

STATE of Idaho, Plaintiff–Respondent,

v.

William Harry JENKINS,
Defendant–Appellant.

No. 33347.

Supreme Court of Idaho,
Boise, December 2006 Term.

Feb. 21, 2007.

Sallaz & Gatewood, Chtd., Boise, for appellant. G. Scott Gatewood argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Lori A. Fleming argued.

TROUT, Justice.

This case involves an appeal from a decision of the magistrate judge denying a motion to suppress evidence.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Boise police officers responded to an alleged battery at a Boise residence, in which the victim indicated that William H. Jenkins (Jenkins) had battered her and attempted to drive over her in his car. The victim gave the police a physical description of Jenkins as well as a description of his vehicle and his license plate number, all of which were forwarded to dispatch. Using the license plate number, the police located Jenkins's home address and drove to his home. Finding no one at the Jenkins residence, the responding officer parked in front of a neighbor's house and waited for Jenkins to return home. Approximately fifteen to twenty minutes later, a car matching the description of Jenkins' car drove up to the house. Because it was dark, the officers could not see the license plate number or determine whether the driver matched the physical description of Jenkins. As the car pulled into the driveway, the officer turned on his overhead lights and pulled in behind the car. After waiting for the garage door to open, the suspect car proceeded into the garage. The driver began to get out of the car, but the officer instructed him to stay seated. At that point,

the officer confirmed the identity of the driver as Jenkins. The officer questioned Jenkins about the battery and, because Jenkins smelled of alcohol, conducted field sobriety tests.

The State charged Jenkins with misdemeanor battery and driving under the influence (DUI). Jenkins moved to suppress the evidence gained during the investigation in Jenkins' garage on the grounds that it was obtained through a warrantless entry into his private garage. The magistrate judge denied the motion to suppress. Analyzing the facts as a *Terry* stop, the magistrate judge found that the officer had a reasonable, articulable suspicion sufficient to stop Jenkins and follow him into his garage to perform an investigation. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Jenkins entered a conditional guilty plea to the DUI charge, preserving his right to appeal the decision on the motion to suppress. The district court affirmed the magistrate judge, determining that if the *Terry* stop began in the driveway, the police officer was entitled to follow Jenkins into the garage. The Court of Appeals first concluded there was no probable cause to arrest under the facts of this case. The Court of Appeals then applied this Court's decision in *State v. Maland*, 140 Idaho 817, 103 P.3d 430 (2004) and reversed, holding that the officer was not entitled to follow Jenkins when he retreated into the garage. This Court granted review.

## II.

### STANDARD OF REVIEW

When considering a case on review from the Court of Appeals, this Court gives serious consideration to the views of the Court of Appeals; however, this Court reviews the trial court's decision directly. *State v. Benefiel*, 131 Idaho 226, 228, 953 P.2d 976, 978 (1998). In other words, this Court does not merely review the correctness of the Court of Appeals' decision; rather, this Court hears the matter as if the case were on direct appeal from the magistrate judge's decision. *Id.*

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found. *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004).

## III.

### DISCUSSION

The Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution protect people against unreasonable searches and seizures. U.S. Const. amend. IV; Idaho Const. art. I, § 17. The guarantees under the United States Constitution and the Idaho Constitution are substantially the same. *State v. Fees*, 140 Idaho 81, 88, 90 P.3d 306, 313 (2004). When seizure occurs without a warrant, the government bears the burden of proving facts necessary to establish an exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Evidence obtained in violation of these constitutional protections must be suppressed in a criminal prosecution of the person whose rights were violated. *State v. Curl*, 125 Idaho 224, 227, 869 P.2d 224, 227 (1993).

### A. Reasonable Expectation of Privacy

Before addressing whether the State complied with Fourth Amendment requirements in this case, it is necessary to determine whether Fourth Amendment protections apply. The Fourth Amendment prohibits police from making a warrantless, non-consensual entry into a suspect's home in order to make a routine, non-exigent arrest. *Payton v. New York*, 445 U.S. 573, 587–88, 100 S.Ct. 1371, 1380–81, 63 L.Ed.2d 639, 651–52 (1980). However, the warrantless arrest of an individual in a public place upon probable cause does not violate the Fourth Amendment. *See United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, 609 (1976). In *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the Supreme Court found that a person standing on the threshold of her home in her

doorway was in a public place not subject to Fourth Amendment protection. *Id.* at 42, 96 S.Ct. at 2409, 49 L.Ed.2d at 305. The Court relied on the proposition that "[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Id.,* citing *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967). Because Santana "was not in an area where she had any expectation of privacy," the Court reasoned that she was in a public place subject to arrest upon probable cause, with no warrant required. *Santana,* 427 U.S. at 42, 96 S.Ct. at 2409, 49 L.Ed.2d at 305.

Jenkins conceded below that his driveway, though private property, was a public place for purposes of the Fourth Amendment. *See State v. Christensen,* 131 Idaho 143, 147, 953 P.2d 583, 587 (1998) (noting that police with legitimate business, like other citizens, are entitled to enter areas of curtilage impliedly open to public use, such as sidewalks, driveways, and pathways to an entry). On appeal, the State argued in addition, that Jenkins did not have any reasonable expectation of privacy in his open garage that would subject the area to Fourth Amendment protection. In *Santana,* the United States Supreme Court stated that the defendant was "not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Santana,* 427 U.S. at 42, 96 S.Ct. at 2409, 49 L.Ed.2d at 305. The State reasons that Jenkins knowingly exposed his garage to public view and, once inside, was himself exposed to public view, speech, hearing and touch as much as he had been while in his driveway.

 The State's argument unnecessarily expands *Santana.* Jenkins opened an otherwise enclosed garage to gain access to his home. His exposure of the garage to public view was temporary and is more analogous to the opening of a door to a private home than to the continued, knowing display of a walkway, driveway, or open porch where visitors are expected to go. *See State v. Wren,* 115 Idaho 618, 623, 768 P.2d 1351, 1356 (1989) (differentiating between a "public" unenclosed porch and an enclosed porch indistin-

guishable from the attached home). A garage with a large door that exposes much of a garage's interior when open is admittedly different from a house; nevertheless, an attached, enclosed garage is typically an area where people expect privacy and expect to secure their possessions and perform private activities away from public view. While it is true that there can be no reasonable expectation of privacy as to observations which can be made from a driveway impliedly open to public use, this is limited by the principle that police officers without a warrant are only permitted the same level of intrusion as one would expect from a reasonably respectful citizen. *See Christensen,* 131 Idaho at 147, 953 P.2d at 587. Moreover, a privacy interest is not destroyed simply because an officer has open view into an area. *See State v. Clark,* 124 Idaho 308, 313, 859 P.2d 344, 349 (Ct.App.1993) citing *Texas v. Brown,* 460 U.S. 730, 738 n. 4, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502, 511 (1983) ("An open view observation alone, absent exigent circumstances or other Fourth Amendment justification, does not authorize a warrantless seizure or entry into an area where a privacy interest does exist. However, what is seen in open view may furnish probable cause for obtaining a warrant.") Jenkins' garage was part and parcel of the structure constituting his home, and was secured with a door closed at the time police arrived at the home. On the facts of this case, Jenkins had a reasonable expectation of privacy in his temporarily opened attached garage, and this space was subject to Fourth Amendment protection.

**B. Probable Cause to Arrest**

 The magistrate judge analyzed this encounter as an investigatory stop and thus did not address whether the officer had probable cause to arrest Jenkins at the moment of seizure. We conclude that the facts found by the magistrate judge support a determination that the officer had probable cause to arrest Jenkins at the time of the stop.

 A police officer may, without a warrant, arrest a suspect "[w]hen a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it." I.C. § 19–603. To

have probable cause for a felony arrest, an officer must have information that would lead a person of ordinary care to believe or entertain an honest and strong presumption that such person is guilty. *State v. Julian,* 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id.* As the Court explained in *State v. Alger,* 100 Idaho 675, 603 P.2d 1009, "(i)n dealing with probable cause ..., as the very name implies, we deal with probabilities." *Id.* at 677, 603 P.2d at 1011, quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1967). Judicial determination of probable cause focuses on the information and facts the officers possessed at the time. *State v. Maland,* 140 Idaho 817, 823, 103 P.3d 430, 436 (2004).

Jenkins challenges the State's assertion of probable cause for a felony arrest not on the basis that the alleged crime was not a felony, but rather on the basis that the officer was unable to identify the driver as Jenkins. Clearly, the officers had probable cause to believe a felony had been committed based on the victim's statements. Further, we conclude the arresting officer had probable cause to believe that the driver of the vehicle he stopped committed that crime. The question is not whether the police had probable cause to believe that Jenkins was the driver of the car; rather, the question is whether the victim provided an adequate description of her assailant to allow the officers to corroborate that the driver of the stopped car was the person who attempted to injure her. In this case, the victim's identification of the suspect's license plate number led the officers to Jenkins' home; Jenkins was not at home when the police knocked; there was close proximity in time between the victim's call to the police and the time the suspect vehicle pulled up to Jenkins' house; the vehicle pulling into Jenkins' home matched the victim's description of the car the suspect used in attempting to run over her; and the driver activated the garage door opener from the vehicle. The magistrate judge's findings of fact sufficiently demonstrate that the officer had probable cause to believe the driver of the vehicle had committed the crime alleged. When the officers turned on their overhead lights in Jenkins' driveway, they acted on probable cause to arrest in a public place, regardless of whether they articulated this exact purpose.

Under *Santana,* "a suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place." 427 U.S. at 43, 96 S.Ct. at 2410, 49 L.Ed.2d at 306. Like the suspect in *Santana* who could not thwart an arrest initiated on her threshold by fleeing inside her home, Jenkins could not thwart the arrest, validly initiated upon probable cause in his driveway, by fleeing inside. As in *Santana,* "[t]he fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into [the suspect's] house." *Id.* The police had probable cause to arrest Jenkins and the rightful authority to follow him into his garage in order to complete the arrest. Because we find that the officer had probable cause to arrest Jenkins, we need not discuss the validity of the encounter as a *Terry* stop.

## IV.

## CONCLUSION

The magistrate judge's order denying Jenkins' motion to suppress evidence is affirmed.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.