988 P.2d 689

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Peter Corey SCHWARZ, Defendant–Respondent.**

**No. 24825.**

Supreme Court of Idaho,
Idaho Falls, May 1999 Term.

Sept. 28, 1999.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Gilman J. Gardner, Bonneville County Public Defender; John L. Stosich, Deputy Public Defender, Idaho Falls, for respondent. John L. Stosich argued.

SCHROEDER, Justice.

This is an appeal brought by the State of Idaho from the district court's decision to grant a motion to suppress.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

On July 17, 1997, Magistrate Mildred R. McClure issued a bench warrant for the arrest of Peter Corey Schwarz (Schwarz), for his failure to appear for a hearing on July 15, 1997. The day after the warrant was issued Officer Steve Poulter and Reserve Officer Lyman Linstrand were on bicycle patrol in Idaho Falls when Officer Poulter saw an automobile make two right-hand turns without signaling. The officers caught up with the driver of the vehicle in a parking lot, and Officer Poulter asked the driver for his license, registration and proof of insurance. The driver identified himself. As the driver searched for his registration and proof of

insurance, Officer Poulter asked the passenger to identify himself. The passenger identified himself as Schwarz. Officer Poulter asked Schwarz for proof of identification. As Schwarz handed Officer Poulter his driver's license, Schwarz stated, "Please don't run my name; there's a warrant for my arrest."

Officer Poulter radioed the dispatcher to request a warrant check on Schwarz. He then approached Schwarz's side of the automobile and asked him to step out of the vehicle. As Schwarz stepped out of the vehicle, he appeared nervous, looking around as if for an escape route and exhibiting a "fight or flight" stance. Because Officer Poulter had been in several other situations in which suspects took a similar stance and either fled the scene or fought with officers, he decided to place Schwarz in handcuffs. Officer Poulter then advised Schwarz of his *Miranda* rights and frisked the waist band and front pockets of Schwarz's shorts. Officer Poulter testified that he read Schwarz his *Miranda* rights, not because Schwarz was under arrest, but because he was "being detained" and because it was police protocol to advise a person of his *Miranda* rights after placing him in handcuffs. When asked why he conducted a pat-down of Schwarz's person, the officer stated that it was "[j]ust part of our training and to search for—just to pat down for any handcuff keys or weapons."

During the pat-down, Officer Poulter felt what he believed to be a glass vial commonly used for drug storage in the left pocket of Schwarz's shorts. The vial was full of a white substance which Officer Poulter suspected to be methamphetamine. After the pat-down, the police dispatcher incorrectly informed Officer Poulter that there was no warrant outstanding for Schwarz. The paperwork for the outstanding warrant had apparently not been entered into the computer system. Schwarz told Officer Poulter that the vial belonged to him and that it contained methamphetamine. Officer Poulter arrested Schwarz for possession of a controlled substance. A field test indicated that the substance was methamphetamine. Another officer served the outstanding warrant on Schwarz later that day. The State charged Schwarz with possession of a controlled sub-

stance in violation of section 37–2732(c)(1) of the Idaho Code (I.C.). At the preliminary hearing before the magistrate, Schwarz made an oral motion to suppress the glass vial and the statements he made following the pat-down search by Officer Poulter. The magistrate denied the motion in a written decision, concluding that

as a result of the two infractions the Officers had probable cause to stop the vehicle in which the Defendant was riding. More importantly, the statement by the Defendant that there was a Warrant outstanding for him constituted an admission and probable cause for his detention and even for his arrest. Hence, Officer Poulter was justified in requesting that the Defendant exit the vehicle and be handcuffed, buttressed by his nervous reaction and "flight or fight" stance. Moreover, although the handcuffing of the Defendant reduced the safety risks, it did not eliminate them. Therefore, even if this were merely an investigative detention, Officer Poulter properly conducted a pat-down search or frisk, which is a minimal intrusion of the Defendant's privacy, for safety purposes. However, given the Defendant's admission that there was a Warrant for him, and although Officer Poulter had not received confirmation of the Warrant, he was entitled as a matter of law to arrest the Defendant and conduct a pat-down search incidental to an arrest.

The magistrate bound Schwarz over to the district court to answer the charge.

Schwarz renewed his motion to suppress in district court. Relying on *United States v. Prim*, 698 F.2d 972 (9th Cir. 1983), the district court held that "the trial court must decide the reasonableness of the search on the basis of the police officer's actual or stated intent at the time." Although the district court agreed that Officer Poulter had probable cause to arrest Schwarz after Schwarz informed him about the outstanding arrest warrant, the district court nevertheless concluded that the search was invalid. The district court based its ruling on the fact that Officer Poulter had testified that he did not arrest Schwarz, but only conducted a seizure and frisk based on his suspicion that

Schwarz was armed and dangerous. Concluding that there was no reason for Officer Poulter to believe that Schwarz was armed and dangerous after being handcuffed, the district court ruled that the search of Schwarz's pockets was not justified and granted the motion to suppress.

On June 26, 1998, Schwarz filed a motion to dismiss. The district court orally granted the motion on July 2, 1998, during its 11:00 a.m. motion hearing. On that same day, at 1:10 p.m., the State filed a Notice of Appeal from the district court's June 22, 1998, order granting the motion to suppress. A written order of dismissal was filed later that day at 4:53 p.m.

## II.

### THIS COURT HAS JURISDICTION TO CONSIDER THIS APPEAL.

■ Schwarz claims that this Court does not have jurisdiction to consider this appeal because the State only appealed the district court's decision granting the motion to suppress and not the district court's decision dismissing the charge against him. The filing of a notice of appeal which is based upon an appealable order under Rule 11 of the Idaho Appellate Rules (I.A.R.) has the effect of staying the proceedings before the district court pursuant to I.A.R. 13(c). The State had a right to appeal the order granting the motion to suppress pursuant to I.A.R. 11(c)(7). *See State v. Alanis,* 109 Idaho 884, 887, 712 P.2d 585, 588 (1985) (the right to appeal an order granting a motion to suppress pursuant to I.A.R. 11(c) is not conditioned upon a subsequent entry of a final judgment of conviction, nor does I.A.R. 11(c) require that such an appeal be taken immediately upon entry of the order granting the motion). The State could have also appealed the order of dismissal pursuant to I.A.R. 11(c)(3), but chose not to. The filing of its notice of appeal on July 2, 1998, at 1:10 p.m., automatically stayed the proceedings. I.A.R. 11(c)(3). The question is whether the case was effectively dismissed before the State filed its notice of appeal on the motion to suppress. If a dismissal of the case had been filed before the filing of the notice of appeal,

there would be no appeal of the dismissal. The dismissal would end the case, and the appeal of the order on the motion to suppress would be of no consequence.

■ However, the record shows that the State filed its notice of appeal before a formal order of dismissal was filed. Because the filing of the State's notice of appeal automatically stayed the proceedings, the district court was without the power to enter the subsequent order of dismissal. As such, the order of dismissal filed 4:53 p.m. on July 2, 1998, is invalid. The case was never effectively dismissed.

## III.

### THE DISTRICT COURT ERRED IN SUPPRESSING THE GLASS VIAL.

#### A. Standard of Review

■ The standard of review for constitutional suppression issues is well-settled:

When reviewing "seizure" issues, we defer to the trial court's factual findings unless they are clearly erroneous. We freely review, de novo, the trial court's legal determination of whether or not an illegal seizure occurred. U.S. CONST., amend. IV.

*State v. Pannell,* 127 Idaho 420, 422, 901 P.2d 1321, 1323 (1995) (quoting *State v. Bainbridge,* 117 Idaho 245, 247, 787 P.2d 231, 233 (1990)). "Further, when an appeal is initially taken to the district court, any subsequent review will be conducted independent of, but with due regard for, the decision of the district court." *State v. Medley,* 127 Idaho 182, 185, 898 P.2d 1093, 1096 (1995) (citation omitted).

#### B. Analysis

The district court relied on *United States v. Prim,* 698 F.2d 972 (9th Cir. 1983), in which federal agents suspected the defendant of drug trafficking. The agents were informed that there was an outstanding nonsupport warrant issued for the defendant. *Id.* at 974. The agents detained the defendant in an airport and found cocaine when they searched the defendant's person and

bags. *Id.* at 974–75. "At the suppression hearing, [the agents] testified that, although they were all aware of the outstanding non-support warrant, the reason for the relocation and detention of the defendant was that they suspected him of trafficking in narcotics, not because of the outstanding warrant." *Id.* at 974.

The Ninth Circuit Court of Appeals reversed the lower court's denial of the defendant's motion to suppress holding that "[a]lthough the existence of reasonable suspicion or probable cause is judicially viewed under an objective standard, it is a standard applied to the actual and/or perceived belief of the law enforcement officer as he either stops and detains or engages in search and seizure." *Id.* at 975. The appellate court concluded that

> the nonsupport warrant was not the [stated] cause of the officers' action and thus not the cause to which the objective standard should be applied. For this reason, the trial court's reliance upon the nonsupport warrant to justify probable cause is clearly erroneous. If anything, it provides a pretext after the fact to justify the officers' actions. Such pretextual use to justify an arrest or search has been clearly recognized as violative of the fourth amendment.

*Id.*

The district court in the present case concluded that it must decide the reasonableness of the search on the basis of Officer Poulter's actual or stated intent at the time of the search. Officer Poulter testified that he conducted the pat-down of Schwarz's person because it was part of his training to search for any handcuff keys or weapons after placing a person in handcuffs. He admitted that once he had placed Schwarz in handcuffs, there was nothing that Schwarz did to cause him to believe his safety or the safety of others was in jeopardy. The district court concluded that "Officer Poulter had no reason to believe that Schwarz was armed and dangerous to Officer Poulter or others after being handcuffed in order to justify a search of Schwarz's shorts pockets." Absent any legal justification for the warrantless search, the district court held that the search was illegal.

The State argues that *Prim* is no longer good law, following the United States Supreme Court holding in *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The Ninth Circuit Court of Appeals summarized the holding in *Whren* as follows:

> In *Whren*, the Supreme Court upheld the validity of a search conducted pursuant to a traffic stop where the officer allegedly pulled the car over for failing to give full time and attention to the operation of a vehicle, for failing to give the appropriate signal before turning, and for driving at a speed greater than is reasonable and prudent under the conditions. Even though the Supreme Court recognized that the officers in *Whren* were patrolling the area for drugs and were suspicious of drug activity in that particular case, in a unanimous opinion, it dismissed the idea that an ulterior motive might serve to strip the officers of their legal justification to stop the vehicle. Holding that "[s]ubjective intentions [of the officers] play no role in ordinary, probable-cause Fourth Amendment analysis," the Supreme Court effectively "foreclos[ed] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."

*United States v. Michael R.*, 90 F.3d 340, 347 (9th Cir. 1996) (construing and quoting *Whren*) (pincites and footnotes omitted). Following *Whren*, the Ninth Circuit Court of Appeals has consistently held that an officer's subjective intent is irrelevant and that a stop or search is not pretextual where there is " 'probable cause to believe that a violation of law has occurred.' " *United States v. Hudson*, 100 F.3d 1409, 1414–16 (9th Cir. 1996), *cert. den.*, 522 U.S. 939, 118 S.Ct. 353, 139 L.Ed.2d 274 (1997); *Michael R.*, 90 F.3d at 347.

*Whren*, *Michael R.* and *Hudson* involve the "pretext" challenge—*i.e.*, the claim that the police had an ulterior motive for conducting the stop or search which was the true basis for the stop or search. In the present case, Schwarz is not claiming that Officer Poulter's stated intentions are pretextual but that the outstanding warrant is an after-the-

fact justification for the search. This issue was addressed in *State v. Julian,* 129 Idaho 133, 922 P.2d 1059 (1996), in which this Court reversed the district court's order granting the defendant's motion to suppress a vial of cocaine found during the course of a custodial search. The defendant in *Julian* had been arrested for misdemeanor domestic battery at a hospital rather than at the scene of a domestic disturbance. Since I.C. § 19–603(6) only allowed a warrantless arrest for misdemeanor domestic battery to be made at the scene of the disturbance, and the disturbance did not occur at the hospital, the trial court ruled that the officers had no authority to arrest the defendant without a warrant. Consequently, the district court granted the motion to suppress. 129 Idaho at 135, 922 P.2d at 1061.

 This Court reversed the district court, setting forth the following rule:

> When reviewing an officer's actions the court must judge the facts against an objective standard. That is, "would the facts available to the officer at the moment of the seizure or search 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate." Because the facts making up a probable cause determination are viewed from an objective standpoint, the officer's subjective beliefs concerning that determination are not material.

*Id.* at 136–37, 922 P.2d at 1062–63. *See State v. Middleton,* 114 Idaho 377, 381, 757 P.2d 240, 244 (Ct. App. 1988) ("The presence or absence of probable cause is determined by a court upon the objective evidence in the case, not upon an officer's subjective impression."); *State v. Cootz,* 110 Idaho 807, 811, 718 P.2d 1245, 1249 (Ct. App. 1986). *See also Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911, 919 (1996) ("The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause."). The *Julian* court concluded that

the officer's decision to cite Julian for domestic battery does not foreclose an inquiry into whether an objective assessment of the facts present at the moment of arrest would lead a person of ordinary prudence to conclude that probable cause existed to arrest Julian for a felony arising from the same operative facts supporting the domestic battery arrest, *i.e.* aggravated battery.

> ... [W]e hold that an objective assessment of the facts found by the district court gave the deputies probable cause to arrest Julian for aggravated battery.

129 Idaho at 137, 922 P.2d at 1063.

 In this case, both the magistrate and the district court agreed that Officer Poulter had probable cause to arrest Schwarz. The facts known to Officer Poulter were that Schwarz said there was an outstanding warrant for his arrest, and Schwarz appeared nervous and exhibited the "fight or flight" stance after he got out of the car. In fact, a probable cause determination to support his arrest had already been made by a neutral, detached magistrate, though the dispatcher gave Officer Poulter incorrect information. Because there was probable cause to arrest Schwarz, Officer Poulter's pat-down search was a valid search incident to the arrest. *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (a search incident to an arrest is a well-settled exception to the warrant requirement); *see also United States v. Robinson,* 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 441 (1973) ("Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the [arrestee] or that he did not himself suspect that [the arrestee] was armed."). The magistrate properly denied the motion to suppress the glass vial and the incriminating statements Schwarz made to Officer Poulter following the pat-down search.

## IV.

## CONCLUSION

The district court decision granting the motion to suppress is vacated. The magis-

trate court's decision denying the motion to suppress is affirmed.

Chief Justice TROUT and Justices SILAK, WALTERS, and KIDWELL, concur.