103 P.3d 448

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Benjamin Reed LAMAY, Defendant–Respondent.**

No. 30638.

Supreme Court of Idaho, Boise, September 2004 Term.

Dec. 2, 2004.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

James K. Ball, Boise, for respondent.

SCHROEDER, Chief Justice.

This case involves the scope of a search incident to an arrest. The district court granted the motion to suppress filed on behalf of Benjamin Reed LaMay. The Court of Appeals reversed the district court. This

Court granted review and affirms the decision of the district court.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

On November 26, 2001, shortly after midnight, Boise City police officers were running warrant checks on the license plates of vehicles at the Plaza Suite hotel. One of the vehicles belonged to LaMay, who had two outstanding misdemeanor warrants. The officers spoke with employees of the hotel and determined that Joseph LaMay, LaMay's brother, had rented a room at the hotel. Three officers proceeded to the hotel room. When Joseph LaMay answered the door, the officers detected the odor of marijuana. They entered the room and observed drug paraphernalia on a table and a knife on the breakfast bar. Apparently the knife had been used to cut pizza. The officers placed the knife in a drawer and did not feel threatened by it.

There were seven people in the room. The officers asked for everybody's name and identification. No one was free to leave. LaMay was lying on the bed with a woman watching television. He claimed that his name was Jake Tuttle but did not give the officers any identification. The officers suspected LaMay was not Jake Tuttle. They took everybody except for Joseph LaMay into the hallway, a distance of approximately fifteen feet from where LaMay had been at the initial encounter. Joseph LaMay was taken to the bathroom for questioning. An officer did a cursory protective sweep of the apartment to make sure there were no other persons in the room. During this protective sweep, the officer saw a backpack on the floor about ten inches from where LaMay's hand had been hanging off the bed when the officers entered the room.

LaMay gave his correct name to the officer in the hallway. The officer placed LaMay under arrest on the warrants, handcuffed him, and required him to remain seated in the hallway with the rest of the persons from the room. Another officer guarded LaMay in the hallway. The officer asked LaMay whether there was marijuana in the room. LaMay stated there was some in a jar under the pillow of his bed. One officer retrieved the jar, and at this point another officer told him about the backpack. While LaMay was handcuffed and guarded in the hallway, an officer searched the backpack, finding currency, cocaine, and LaMay's driver's license. One to two minutes had elapsed from the time the occupants had been removed from the room and the search of the backpack. The location of LaMay's arrest was approximately fifteen feet from where he had been lying on the bed.

LaMay was charged with possession of cocaine with intent to deliver, felony possession of marijuana, and misdemeanor possession of paraphernalia. He moved to suppress the items discovered in the search of the backpack. The district court granted the motion to suppress, finding that the backpack was not within LaMay's immediate control such that it could be searched incident to arrest. The state appealed, and the Court of Appeals reversed. This Court granted review.

## II.

## STANDARD OF REVIEW

On review of a decision of the Idaho Court of Appeals, the Idaho Supreme Court directly reviews the decision of the trial court but gives serious consideration to the intermediate appellate decision. *State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003). In reviewing the grant or denial of a motion to suppress, the Court defers to the trial court's factual findings if they are supported by substantial evidence but freely reviews the application of constitutional principles to the facts. *State v. Holland*, 135 Idaho 159, 15 P.3d 1167 (2000).

## III.

## THE SEARCH WAS NOT A REASONABLE SEARCH INCIDENT TO THE ARREST

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. "Warrantless

searches are presumptively unreasonable." *State v. Weaver,* 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome the presumption of unreasonableness by demonstrating that the warrantless search fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Weaver,* 127 Idaho at 290, 900 P.2d at 198; *State v. McIntee,* 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993). Searches incident to arrest are one of the well-established exceptions to the warrant requirement. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *McIntee,* 124 Idaho at 804, 864 P.2d at 642.

▉ A search incident to arrest permits police to search an arrestee following a lawful custodial arrest and is premised upon the dual justifications of necessity to (1) protect the officer and other persons in the vicinity from any dangerous objects or weapons in the possession of the person arrested; and (2) prevent concealment or destruction of evidence within the reach of the arrestee. *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. *Chimel* defined the justification of a search incident to arrest to extend only to "the arrestee's person and the area 'within his immediate control,'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Idaho has applied the *Chimel* standard and recognized the following factors in determining what is reasonably within an arrestee's area of immediate control:

(1) the distance between the arrestee and the place searched; (2) whether the arrestee was handcuffed or otherwise restrained; (3) whether police were positioned so as to block the arrestee from the area searched; (4) the ease of access to the area itself; and (5) the number of officers.

*State v. Bowman,* 134 Idaho 176, 179, 997 P.2d 637, 640 (Ct.App.2000) (quoting WAYNE R. LAFAVE, SEARCH & SEIZURE § 6.3(c), at 306–07 (3d ed.1996)). Immediate control is determined based on the objective facts of each case. *Bowman,* 134 Idaho at 179, 997 P.2d at 640.

**1. The test adopted in *Belton* does not apply to searches incident to arrest not involving a vehicle in Idaho.**

The United States Supreme Court has developed a narrow bright-line test regarding searches of automobiles incident to arrest. *See New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* held that the search of closed containers in a passenger compartment of a car is within an arrestee's area of immediate control where the arrestee was formerly an occupant of a car. *Belton,* 453 U.S. at 461, 101 S.Ct. at 2864, 69 L.Ed.2d at 775. The Supreme Court "has long distinguished between an automobile and a home or office," recognizing "that '[a]utomobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office.'" *Chambers v. Maroney,* 399 U.S. 42, 48–50, 90 S.Ct. 1975, 1979–81, 26 L.Ed.2d 419, 426–27 (1970) (citing *Dyke v. Taylor Implement Mfg. Co.,* 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968)). Although some federal courts have chosen to apply *Belton* to all searches incident to arrest, Idaho has specifically rejected this extension. *State v. Foster,* 127 Idaho 723, 729, 905 P.2d 1032, 1038 (1995). Moreover, the Supreme Court itself limited application of *Belton. See Foster,* 127 Idaho at 728, 905 P.2d at 1037. *Belton* stated:

Our holding today does no more than determine the meaning of Chimel's principles in this particular context. It in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests.

*Belton,* 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3, 69 L.Ed.2d at 775 n. 3. *Foster* concluded "the *Belton* objectives and Fourth Amendment principles are best served by limiting *Belton's* application to searches of automobiles that were occupied by a defendant at the time of arrest . . . ." *Foster,* 127 Idaho at 730, 905 P.2d at 1039. The State argued in briefing that *Foster* is distinguishable because the case only decided whether the defendant was an occupant of a vehicle searched. However, whether the arrestee

was considered an "occupant" in *Foster* determined whether the court should apply *Belton* or *Chimel* and thereby extend the scope of a search incident to arrest. The conclusion of the Court in *Foster* is that "[b]ecause the *Belton* rule does not apply to the search of Foster's vehicle, the search was valid only if it meets the *Chimel* 'lunge area' test." 127 Idaho at 730, 905 P.2d at 1039. *Foster* expressly rejected extension of *Belton* to all searches incident to arrest, determining that only searches of automobiles apply *Belton*. LaMay's backpack was in a hotel room and not a car at the time of the search. The proper test of the search of LaMay's backpack incident to arrest is that set forth in *Chimel*.

2. **The district court properly applied the *Chimel* test to the facts in determining that the backpack was not within LaMay's "immediate control" at the time of his arrest.**

 The district court applied the factors previously set forth by the Court of Appeals in *State v. Bowman*, 134 Idaho 176, 997 P.2d 637 (Ct.App.2000):(1) the distance between the arrestee and the place searched; (2) whether the arrestee was handcuffed or otherwise restrained; (3) whether police were positioned so as to block the arrestee from the area searched; (4) the ease of access to the area itself; and (5) the number of officers. *Bowman*, 134 Idaho at 179–80, 997 P.2d at 640–41. The district court determined that LaMay's backpack was not within his immediate control at the time of his arrest. *Chimel* states that "[t]here is no comparable justification ... for routinely searching any room other than that in which an arrest occurs .... Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The backpack was nearly fifteen feet away from LaMay and located in a different room. It presented no immediate danger to the officers or others surrounding the arrest. The knife which was apparently used to cut pizza, and which the officers put in a drawer, is an irrelevancy in this analysis. The officers had no fear of it as a weapon. The backpack and its contents were not in danger of being destroyed. LaMay was restrained in handcuffs and guarded by an officer in the hallway. There were no exigent circumstances in this case justifying the search of the backpack without a warrant. The premises could have been secured and the evidence supporting the claim of probable cause to search presented to a neutral magistrate. *See Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).

The State argues that a container is considered to be within an arrestee's immediate control where the item was formerly within the defendant's immediate control at the time officers first encountered the defendant, relying on *Harris* and *Champagne* which involved searches of automobiles, applying the bright-line *Belton* test. *See e.g., Champagne*, 137 Idaho 677, 52 P.3d 321; *Harris*, 130 Idaho 444, 942 P.2d 568. *Chimel* is the test of a search incident to arrest of a home, not *Belton*. The State's reliance on *State v. Schwarz*, 133 Idaho 463, 988 P.2d 689 (1999), is misplaced. *Schwarz* involved a search incident to arrest of a former passenger in a vehicle. *Schwarz*, 133 Idaho at 464, 988 P.2d at 690. The evidence obtained in *Schwarz* was found on the body of the arrestee. *Id.* The key issue in *Schwarz* was in regards to the delay in time between the search and formal arrest, not the extent of geographic scope in a search incident to arrest.

The State relies on a sentence in *Northrop v. Trippett*, 265 F.3d 372 (6th Cir.2001), *cert. den.* 535 U.S. 955, 122 S.Ct. 1358, 152 L.Ed.2d 354 (2002) which states that "the right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of the search." *Northrop*, 265 F.3d at 379. However, the evidence found in the container in *Northrop* was eventually suppressed because officers lacked probable cause for the initial stop. The comment concerning accessibility has little relevance or weight. *Id.* at 383. Additionally, the word "accessible" is misleading because it is not inconsistent with the *Chimel* test of immediate control. The container searched in *Northrop* was in fact just at the defendant's feet. Additionally, the search in *Northrop* took place in a public

location, a place in which a person has a diminished expectation of privacy unlike a private home and/or hotel room. *State v. Dreier*, 139 Idaho 246, 251, 76 P.3d 990, 995 (Ct.App.2003).

The State also relies on *United States v. Han*, 74 F.3d 537 (4th Cir.1996), in which officers separated the defendant from a container prior to arrest and the officer's subsequent search. However, following separation one of the officers re-inserted the bag into Han's "immediate control" while sitting next to him and then asked for consent to search the bag. *Id.* at 540. Han claimed the bag was not his and thus abandoned his interest in the bag. *Id.* The police's search of the bag revealed incriminating evidence, and Han was subsequently arrested. The Fourth Circuit stated that "when a container is within the immediate control of a suspect at the beginning of an encounter with law enforcement officers; and when the officers search the container at the scene of the arrest; the Fourth Amendment does not prohibit a reasonable delay ... between the elimination of danger and the search." *Id.* at 543. This language has little relevance to the case at hand. Unlike LaMay's case, the officers in *Han* had consent to search the bag, the bag was seized while in the immediate control of the defendant, and the search itself occurred after the bag was once again in the defendant's area of immediate control. The State's argument that the holding in *Han* creates a relation-back theory for searches incident to arrest was undercut by the Supreme Court in *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). *Knowles* held that when the historic rationales for the "search incident to arrest" exception are not present, the justification for the search is immediately withdrawn. *Id.* at 119, 119 S.Ct. at 488, 142 L.Ed.2d at 499. LaMay's backpack was not seized while it was within his control. When the officers had secured their own safety and restrained LaMay the justifications underlying the search incident to arrest warrant exception ceased to exist.

The State relies on *United States v. Hudson*, 100 F.3d 1409 (9th Cir.1996). In *Hudson*, the defendant was removed from a room prior to search because he was a suspected gang member with a violent criminal past. When law enforcement entered the room there was a rifle at Hudson's feet. *Id.* Officers removed Hudson to protect their own safety. The Ninth Circuit limited *Hudson* to "the narrow facts of a short time span and the arrestee's close proximity." *Id.* *Hudson* held that immediate control should be restricted to the area where the defendant was arrested. *Id.* at 1418. LaMay was arrested in the hallway some fifteen feet from the backpack. In LaMay's case the police themselves testified they did not fear for their safety following their initial contact with LaMay. *Id.* *Hudson* is distinguishable from the case at hand.

It is unnecessary to conduct an independent analysis of the Idaho Constitution. The United States Supreme Court expressly limited the holding in *Belton* to searches incident to arrest involving automobiles. This Court's decision in *Foster* applies that standard. The search in this case violated the Fourth Amendment to the United States Constitution. It is not necessary to engage in an analysis of whether the Idaho Constitution provides a greater protection to individuals than those rights under the Fourth Amendment.

## IV.

## CONCLUSION

The decision of the district court granting LaMay's motion to suppress is affirmed.

Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.