**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41431**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 84** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: October 8, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| JUSTIN LEE PEDERSEN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Melissa Moody, District Judge.

Order denying motion to suppress evidence, affirmed.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

After arresting Justin Lee Pedersen on a warrant, an officer searched Pedersen's jacket and found methamphetamine in a pocket. Pedersen was then charged with possession of a controlled substance. He filed a suppression motion, arguing that the search of his jacket was illegal because the jacket was not in his possession at the time of arrest. The district court disagreed and held that the jacket was permissibly searched incident to arrest. Pedersen appeals.

**I.**

**BACKGROUND**

Early in an evening in March, several law enforcement officers were at a residence in Garden City. While the officers were at the scene, Pedersen arrived, and events unfolded that led to his arrest for possession of methamphetamine, Idaho Code 37-2732(c).

Pedersen filed a suppression motion, asserting that the methamphetamine was found during a search that violated the Fourth Amendment. At a hearing on the motion, Pedersen

1

testified that, when arrested, he resided at the Garden City home with three other individuals. During the evening in question, he arrived home on his motorcycle and saw numerous vehicles parked there. He also saw standing outside several plainclothes officers[1] and several of his roommates and other friends. An officer approached him, asked for basic information, and denied Pedersen's request to go inside to use the restroom. Pedersen then removed "everything on his person," i.e., his wallet, knife, cellphone, and jacket, and handed these items to a roommate. He then sat on a railroad tie to smoke a cigarette. At that point, he was ten to fifteen feet from the roommate with his jacket. Five to seven minutes later, the officer who had previously approached Pedersen arrested and handcuffed him, stating that there was a warrant for his arrest. Pedersen was not surprised because he knew that such a warrant existed. The arresting officer asked another officer to get the items that Pedersen had handed to his roommate. Pederson was then transported to jail.

Boise Police Detective Jagosh testified that he and other officers were investigating the theft of a generator that was posted for sale on the Internet and had questioned the people at the scene before Pedersen appeared. One person in the home indicated that Pedersen had stolen the generator, and when Pedersen arrived, one of the roommates identified him. After a brief discussion with Pedersen, Detective Jagosh stepped away to ask dispatch if there were outstanding warrants for his arrest. When doing so, the officer directed Pedersen not to move from the spot where he was then standing. Jagosh testified that Pedersen disregarded that order by walking to where a female roommate was seated and giving her his jacket and several other items. After dispatch indicated that Pedersen had an active arrest warrant, Jagosh arrested and handcuffed Pedersen. Jagosh directed another officer, Detective Scally, to collect the jacket and other items from the roommate, who was approximately fifteen feet away, sitting atop the jacket. At that point, there were seven civilians in and around the house and six officers at the scene. The other officers were performing different tasks, and no officer was located between Pedersen and the roommate. Scally collected the jacket, searched it, and found methamphetamine inside.

After the hearing, the court found that the officers did not have complete control of the scene when they decided to seize the jacket, as there was no officer positioned between Pedersen

---

[1]     The officers were wearing plain clothes, but had visible badges. They had arrived in unmarked police cars.

and the jacket and the other officers were busy with other civilians or concerns. Second, the court found that the jacket was easily accessible to Pedersen because the distance between Pedersen and the jacket was "ten to fifteen feet" and the roommate sitting on it could have brought it to Pedersen. For these reasons, the court concluded that the jacket was within an area of Pedersen's "immediate control" and that the search of the jacket therefore was a valid search incident to Pedersen's arrest.

Pedersen entered a conditional guilty plea, preserving the right to appeal the denial of his suppression motion.

## II.

## ANALYSIS

When reviewing the denial of a suppression motion, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment prohibits unreasonable searches and seizures. A warrantless search is presumptively unreasonable unless it falls within an exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). A search incident to a lawful arrest constitutes one such exception. *Riley v. California*, ___ U.S. ___, ___, 134 S. Ct. 2473, 2482 (2014); *see also United States v. Robinson*, 414 U.S. 218, 235 (1973); *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct. App. 1996). Searches incident to arrest are allowed because "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape," and it is further reasonable "for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel*, 395 U.S. at 763. A search incident to arrest is not limited to the arrestee's person but may extend to "the area 'within his immediate control'--construing that phrase to

mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

Pedersen contends that the district court here erred in finding that his jacket was within the area of his immediate control when it was searched following his arrest and handcuffing. He likens this case to circumstances presented in *State v. LaMay*, 140 Idaho 835, 103 P.3d 448 (2004). In that case, officers entered a hotel room to serve a warrant. After smelling marijuana and seeing contraband in the room, officers removed all of the seven occupants of the room to the hallway. LaMay was then arrested, handcuffed, and required to remain seated in the hallway along with the other persons from the room. While LaMay was handcuffed and guarded in the hallway, an officer searched a backpack that was lying on the floor next to a bed where LaMay had been lying when the officers arrived. It was found to contain currency, cocaine, and LaMay's driver's license. At the time of his arrest, LaMay was approximately fifteen feet from the backpack. The Idaho Supreme Court affirmed the district court's finding that the backpack was not within LaMay's immediate control such that it could be searched incident to his arrest. The Supreme Court noted that the backpack was nearly fifteen feet away from LaMay and located in a different room. The Court concluded that the backpack presented no immediate danger to the officers or others and its contents were not in danger of being destroyed. *Id.* at 839, 103 P.3d at 452. The Court rejected the State's argument that "a container is to be considered to be within an arrestee's immediate control where the item was formerly within the defendant's immediate control at the time officers first encountered the defendant." *Id.*

We do not find *LaMay* to be closely analogous to the present case because no wall separated Pedersen from his jacket, and all of the persons at the scene were not under tight police control as was the case in *LaMay*. Although there was an approximately equal number of officers and civilians on scene, the district court here specifically found:

> [T]his is not a controlled situation. This is a moving-parts situation. It's not a situation where everybody is in one place. You have people that are in the backyard. You have a person that is in the house, refusing to come out. There was also testimony that a Garden City officer--and I'll make this as a factual finding--pulled one of the civilians to the left side of the home. So we have a number of locations that are uncontrolled by these officers. And, frankly, even if there were eight officers to five civilians, even if they had outnumbered them, I can't say, given the moving parts and, frankly, the volatility of the situation, that the officers could be safe.

4

Further, unlike in *LaMay*, there was a third party with control of the item and capable of conveying that item to Pedersen. Given these differences, *LaMay* does not dictate suppression here.

The State argues that this case is nearly identical to *State v. Bowman*, 134 Idaho 176, 997 P.2d 637 (Ct. App. 2000), where we affirmed the district court's denial of a suppression motion. In that case, after the defendant was stopped by police, but before he was arrested, he took off his jacket and handed it to a woman at the scene. At the time of the arrest, the woman with the jacket was standing about fifteen feet from the defendant. After arresting the defendant, the officer seized and searched the jacket, finding marijuana and methamphetamine. As here, the defendant argued that the jacket could not be searched incident to arrest because it was held by another person. This Court identified several nonexclusive factors that bear upon whether an item is reasonably within an arrestee's area of "immediate control":

> (1) the distance between the arrestee and the place searched; (2) whether the arrestee was handcuffed or otherwise restrained; (3) whether police were positioned so as to block the arrestee from the area searched; (4) the ease of access to the area itself; and (5) the number of officers present as compared to the number of companions of the arrestee.

*Bowman*, 134 Idaho at 179-80, 997 P.2d 640-41. We then affirmed the district court's finding that the jacket was within the defendant's immediate control. We reasoned:

> This jacket hand-off occurred while Bowman was standing directly in front of the police car, immediately after dispatch had advised [Officer] Wittmuss of the outstanding arrest warrant but just before Wittmuss could actually arrest Bowman on the warrant. Officer Wittmuss could reasonably construe these circumstances as indicating that Bowman was attempting to disassociate himself with the jacket because it contained something Bowman did not want the officer to see--a weapon or contraband. While Bowman was in the process of being handcuffed, the woman, who had stepped back from Bowman, was in possession of the jacket. The distance from Bowman to the jacket was only fifteen feet--a distance that the woman, Bowman or both might have easily covered. Had there been a weapon in the coat, the woman, Bowman, Haskell and the officer were all within the zone of activity in which it could have been used by the woman or made available to the defendant.
>     The potential for risk of harm to the officer on these facts was high. To allow a defendant to hand over an article of clothing just before his arrest and thereby avoid the search of said item would seriously undercut the purposes and policy behind the search incident to that arrest--ensuring the safety of officers and bystanders through the recovery of weapons within the defendant's area of

5

immediate control and preventing the loss or destruction of evidence of criminal activity.

*Id.* at 180, 997 P.3d at 641.

Pedersen attempts to distinguish *Bowman*, pointing out that Pedersen was handcuffed before the search occurred and that his jacket was being sat upon before it was seized by police. We find these distinctions unpersuasive. That Pedersen was handcuffed does not fully distinguish *Bowman* because Bowman had been placed under arrest and was being handcuffed as the police seized his jacket. *See id.* He was fully handcuffed before the search occurred. *Id.* The fact that the woman in *Bowman* was holding the jacket while the woman in this case was sitting on the jacket is not a significant distinction. In *Bowman*, one of the risks we considered was the risk that the third party would help the defendant acquire a weapon from the jacket. That risk is not mitigated where the third party sits on the jacket. Indeed, Pedersen's arguments ignore the possibility that the woman might aid him.

We thus agree with the State that if *Bowman* remains viable authority, the district court's decision here, denying Pedersen's suppression motion, must be affirmed. We must consider, however, the effect upon the search incident to arrest doctrine of the United States Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009), which significantly restricted this warrant exception in the context of searches of automobiles incident to an occupant's arrest. In *Gant*, the Supreme Court said that many lower courts had misconstrued *New York v. Belton*, 453 U.S. 454 (1981), as authorizing the search of an automobile incident to an occupant's arrest even when the arrestee had been secured, there was no threat to officer safety, and there was no reason to believe that the automobile might contain evidence of a crime. Rather, the *Gant* Court held, the Fourth Amendment did not permit a search of an arrestee's car after he had been removed from the vehicle and secured unless there was reason to believe that the automobile contained evidence of the crime for which the arrest was made. The Court said that "[t]o read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications [i.e., officer safety and preventing the destruction of evidence] underlying the *Chimel* exception." *Gant*, 556 U.S. at 343. With *Gant* having been handcuffed and locked inside a police car before his car was searched, the Supreme Court held the search unreasonable because "Gant clearly could not have accessed his car at the time of the search." *Id.* at 333.

6

Although it might be argued that *Gant* has no application outside the context of automobile searches, that is not readily apparent from the *Gant* opinion itself. The *Gant* Court emphasized "the justifications underlying the *Chimel* exception," *Gant*, 556 U.S. at 343, and *Chimel* did not involve a vehicle search. *Gant* does not suggest that the Court intended to place greater restrictions upon searches of automobiles incident to arrest than would be applicable to other *Chimel* searches. Instead, it insisted that focus be directed to the factors identified in *Chimel* as justifying the search incident to arrest exception--the arrestee's potential access to weapons or ability to destroy evidence--when the search is conducted. We thus conclude that *Gant's* posture cautioning against a broadening of the search incident to arrest exception beyond the limitations expressed in *Chimel* is not restricted to vehicle searches, but is a reminder that all searches incident to arrest must be tethered to the *Chimel* justifications.

This conclusion does not mean, however, that the search of Pedersen's jacket was unjustified as a search incident to arrest. In our view, neither the factors identified in *Bowman* to be considered in determining the area of an arrestee's immediate control, nor the ultimate result in *Bowman*, is inconsistent with *Gant* or *Chimel*. The Third Circuit Court of Appeals decision in *United States v. Shakir*, 616 F.3d 315 (3d Cir. 2010) lends support to this conclusion. In *Shakir*, the defendant was arrested in a hotel lobby. He had been handcuffed and was guarded by two officers before police searched a bag that he had just dropped to the floor. Although the *Shakir* court concluded that *Gant's* admonitions against loosening of the search incident to arrest standard applied beyond automobile searches, it nonetheless held that the search of Shakir's bag was a legitimate search incident to his arrest. The court reasoned that the bag was within the defendant's area of control because it was close at hand and because he was arrested in a public area with several bystanders and a suspected confederate nearby. The court interpreted *Gant* "to stand for the proposition that police cannot search a location or item when there is no reasonable possibility that the suspect might access it," *id.* at 320, but found the possibility of access not eliminated in the case before it. The court noted that "handcuffs are not fail-safe," *id.*, and concluded that "reading *Gant* to prohibit a search incident to arrest whenever an arrestee is handcuffed would expose police to an unreasonable risk of harm." *Id.* at 321. Although recognizing that the standard "requires something more than the mere theoretical possibility that a suspect might access a weapon or evidence," the court said that "it remains a lenient standard." *Id.*

7

In the present case, although we take *Gant's* admonitions into account, we conclude that the police conducted a valid search incident to Pedersen's arrest for reasons similar to those stated in *Bowman* and *Shakir*. Although Pedersen was handcuffed, he was attended by only one officer, and according to the district court's findings, no other officer was positioned so as to block Pedersen's access to the jacket or prevent the woman from delivering the jacket to him. Although there were a total of six officers at the scene, there were also seven civilians at various areas around the house, including one who had refused to come out of the house. None of the other civilians had been arrested or handcuffed, so the scene was not well under police control. We agree with the district court's finding that, "given the moving parts and . . . the volatility of the situation," it could not be said that the officers were entirely safe or that Pedersen's access to the jacket was foreclosed.

We caution, however, that our holding is a narrow one and should not be interpreted to endorse the search of any and all items that may have been handed off to a third party shortly before a defendant's arrest. If Pedersen had been placed in the police car before the search, if there had been a second policeman in a position to help control Pedersen, or if there had been fewer unrestrained civilians at the scene, we would be presented with a different question. In many cases, an item located fifteen feet away from a handcuffed arrestee may be beyond the arrestee's "area of immediate control." Here, however, we conclude that because officers had not gained control over the area and had good reason to believe that Pedersen might have been able to access the jacket with the aid of a confederate, the search of the jacket incident to Pedersen's arrest did not violate the Fourth Amendment.

The order denying Pedersen's suppression motion is affirmed.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**