HORTON, J.,
concurring in part and dissenting in part.
I join in Section A of the Court’s opinion. No reasonable person could entertain a reasonable suspicion that a motorist was driving under the influence based upon observing a car’s right hand tires touch the line marking the right side of a lane two times when there was a separation of approximately one mile between occurrences. However, I respectfully dissent from Section B of the Court’s opinion and from the conclusion that the decision of the district court should be reversed. For the following reasons, I would affirm.
Idaho Code section 49-637 provides, in pertinent part, as follows:
Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.
I agree with the majority’s analysis of Idaho Code Section 49-637(1) in one respect; the plain language of the statute does not express clear legislative intent regarding the legal effect of driving on a fog line or other line demarcating a lane of travel. This is because the statute does not address fog lines or roadway markings of any kind. In my view, the appropriate inquiry is framed by the statute imposing a duty on motorists to drive their vehicles “as nearly as practicable entirely within a single lane.” Thus, the real question is: “What does it mean to drive ‘within a single lane?’ ” The answer to this question lies in the meaning of the longitudinal line markings found on Idaho’s roadways.
This Court has stated that “[tjraffic rules and regulations, signs, signals and markings, lawfully adopted and placed by administrative authority, and which are not merely arbitrary or capricious, have the force and effect of law, and motorists are charged "with knowledge of the significance thereof.” Howard v. Missman, 81 Idaho 82, 88, 337 *448 P.2d 592, 595 (1959). This statement leads me to consider the exercise of administrative authority reflected by the lines on the roads.
The legislature has charged the Idaho Transportation Board with the obligation to “adopt a manual and specifications for a uniform system of traffic-control devices” that “shall correlate with and, so far as possible, conform to the system set forth in the most recent edition of the manual on uniform traffic-control devices for streets and highways and other standards issued or endorsed by the federal highway administrator.” I.C. § 49-201(3). In response, by way of IDAPA 39.03.41.004, the Board has adopted the 2009 edition of the “Manual on Uniform Traffic Control Devices for Streets and Highways” (MUTCD), published by the Federal Highway Administration of the U.S. Department of Transportation.
MUTCD tells us what kinds of line markings [3] are to be found on roads. For two-way roadways, center line pavement markings are yellow. MUTCD § 3B.01.01. White “lane line pavement markings delineate] the separation of traffic lanes that have the same direction of travel.” MUTCD § 3B.04.01. MUTCD § 3B.06 addresses the standards for “edge line pavement markings.” Such markings “delineate the right or left edges of a roadway.” MUTCD § 3B.06.01. Left hand edges of roadways may be delineated by a solid yellow line, MUTCD § 3B.06.03, and, of particular significance to this litigation, “[i]f used, right edge line pavement markings shall consist of a normal solid white line to delineate the right-hand edge of the roadway.” MUTCD § 3B.06.04.
Idaho Code section 49-119(19) defines “roadway” as “that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of sidewalks, shoulders, berms and rights-of-way.” Because a traffic lane is “that portion of the roadway for movement of a single line of vehicles,” I.C. § 49-121(4), and the right edge line pavement marking serves “to delineate the right-hand edge of the roadway,” MUTCD § 3B.06.04, the right edge line pavement marking (the fog line or bicycle lane designator) delineates the right side of the traffic lane.
The question then is whether the right edge line pavement marking is “within” or “without” the traffic lane, or to analogize to sports, whether the edge line is “in bounds” (e.g. tennis) or “out of bounds” (e.g. football). There are two premises underlying my conclusion that the edge line is “out of bounds” or “without” the lane of travel.
The first premise is that lanes of travel are distinct from one another and do not overlap. This is because safety issues arise when two or more vehicles attempt to occupy the same place at the same time on a roadway, whether travelling in the same or opposite directions. For that reason, multiple-lane roadways are designed to separate “lanes of travel” in order to allow different lines of vehicles to operate in parallel on the roadway.
The second premise is that lane markings found at the far right side of the roadway do not have special or unique qualities distinguishing them from any other lane marking. Stated differently, in my view, lane markings — whether on the right or left, broken, dotted or solid, white or yellow — hold equal significance when defining the boundaries of a lane of travel. Certainly, there is nothing to be found in the Idaho Code or MUTCD that suggests that the lines on the far right side of the roadway have lesser significance than the other lines defining lanes of travel.
Based upon these two premises, I conclude that roadway markings demarcating a lane of travel represent the boundaries of the lanes but are not within the lane itself. A contrary conclusion, i.e., that lane markings are within the lane, leads to absurd consequences. If roadway lane markings — whether white or yellow, solid or dashed — used to “delineat[e] the separation of traffic lanes” were deemed to be “within” the lane, then those lane markings would be “within” two lanes at once. As the lines of vehicles in adjacent lanes cannot simultaneously occupy the space above the line separating those lanes, I believe that lanes of travel fall between, not on, *449 the lines defining their bounds. For these reasons, I believe that Officer Thueson had reasonable, articulable suspicion to believe that he observed a violation of Idaho Code section 49-637 on each occasion when he saw Neal’s tires on the line marking the boundary of the right hand lane of travel because Neal’s vehicle was no longer “within” its lane of travel. For this reason, I would affirm the decision of the district court.
Having explained the reasons for my conclusion, I think it is appropriate to consider some of the arguments advanced by the majority to support its conclusion that the right edge line pavement markings are within a traffic lane.
I start first where the majority ends. This is because this is the point where the legal arguments have ended and the real reason for the majority’s conclusion is to be found. The majority concludes: “We find that it would be an unnecessarily harsh interpretation of the statute to conclude that a driver can be pulled over, cited, and possibly then subject to intrusive searches, for merely touching the line at the edge of the roadway.” The majority’s view of a “harsh interpretation of the statute” appears to be nothing more than the majority’s distaste for the result of this particular stop. I acknowledge that my view of Idaho Code section 49-637 would permit an officer to “pull over” and “cite” a motorist for a violation of the statute. However, try as I might, I cannot fathom how a motorist might lawfully be “subject to intrusive searches,” whether of the person or the automobile, “for merely touching the line at the edge of the roadway.”
I differ from the majority in that I believe that the results of Neal’s detention have no legal significance when deciding whether that detention was lawful. The majority’s conclusion reflects its dissatisfaction with the outcome of the detention,[4] rather than appropriately focusing on the threshold question of the legality of that detention. As I believe that the majority’s eagerness to reach the desired result is reflected in arguments advanced in support of its conclusion, I turn my attention to those arguments.
After concluding that Idaho Code section 49-637 is ambiguous, the majority first considers the statute’s location in Title 47. It is true that Idaho Code section 49-637 is found smack dab in the middle of Idaho Code sections 49-630 through 49-644. The majority views these statutes as “all the rules relating to rights of way and safety management regarding other vehicles.... ” This statement is far too broad. Although these provisions primarily relate to the interaction of vehicles upon this State’s highways, they also serve other safety functions. See e.g. I.C. § 49-643(1) (“The driver of a vehicle shall yield the right-of-way to any vehicle or pedestrian actually engaged in work upon a highway____”)
My quarrel with the majority’s reasoning is this: by artificially restricting its consideration of Title 47 to these fifteen statutes in order to bolster its conclusion, the majority ignores the fact that there are fifty-seven statutes in Chapter 6, of Title 49, entitled “Rules of the Road.” The majority further ignores the fact that the “Rules of the Road” advance safety concerns apart from those relating to the interaction of vehicles on the roadways of this State. See I.C. § 49-603 (“No person shall start movement of a vehicle ... unless movement can be made with reasonable safety.”); I.C. § 49-604(1) (“The driver of a vehicle shall not back the vehicle unless that movement can be made with safety and without interfering with other traffic.”); I.C. § 49-605 (“No person shall drive any vehicle upon a sidewalk or sidewalk area ...”); I.C. § 49-608 (“No person shall occupy a manufactured home or commercial coach while it is being moved upon a highway.”); I.C. § 49-612 (prohibiting operation of a vehicle when driver’s view obstructed and interfering with driver’s control of vehicle); I.C. § 49-613(1) (prohibiting placing foreign objects on roadway “likely to injure *450 any person, animal or vehicle”); I.C. § 49-614 (prohibiting drivers from obstructing passage of other vehicles, pedestrians or railroad trains at intersections, crosswalks, and railroad crossings); I.C. § 49-615 (drivers required to exercise due care to avoid striking pedestrians, bicyclists, and children); I.C. § 49-616 (prohibiting driving in an area “within a highway for the exclusive use of pedestrians”); I.C. § 49-627 (prohibiting driving over fire hoses); I.C. §§ 49-648 to 650 (relating to railroad crossings); I.C. § 49-651 (requiring driver emerging from an alley, building, private road or driveway to stop prior to entering a sidewalk); I.C. § 49-654(1) (requiring drivers to proceed at “a safe and appropriate speed” “when special hazards exist with respect to pedestrians”); I.C. § 49-658 (prohibiting speeding in a school zone); I.C. § 49-666 (requiring those under 18 to wear helmets when riding motorcycles and ATVs); I.C. § 49-672 (requiring child safety seats); I.C. § 49-673 (requiring use of seatbelts).
There is simply no basis for the majority’s conclusion that the rules of the road are solely intended to promote the safe interaction of vehicles on the roadways.
The majority’s next line of analysis is based upon Idaho Code section 49-630(1). I frankly don’t understand the significance that the majority places on this statute’s silence as to boundary markings. The statute does not speak to lanes; instead, it requires vehicles to “be driven upon the right half of the roadway.” Although the statute certainly distinguishes the rules of the road in Idaho from those in the United Kingdom and its former possessions, it provides absolutely no guidance as to the meaning of the word “lane” in Idaho Code section 49-637 or the significance of the right edge line pavement marking.
The majority’s next argument is unique, in that it relies upon a definition of “unique” for its conclusion that the purpose of a right edge line pavement marking “is not to create a lane boundary but to inform the driver of the road’s edge so that under certain conditions the driver can safely maintain his or her position on the roadway.” The majority’s argument is grounded in a statement found in MUTCD that “[e]dge line markings have unique value as visual references to guide road users during adverse weather and visibility conditions.” Emphasizing the word “unique,” the majority then defines “unique” as “meaning their one and only value.” There are two substantive difficulties with this analysis.
First, although the quoted language is cited as MUTCD § 3B.06, the majority fails to note that the quoted language is located under the caption “Support.” This is noteworthy because such statements are for informational purposes and do not have legal significance. Indeed, MUTCD cautions that such statements do “not convey any degree of mandate, recommendation, authorization, prohibition, or enforceable condition.” MUTCD § 1A.13.01.D. Significantly, the provisions of MUTCD that I cited earlier when explaining my reasons for reaching the opposite conclusion are found under the caption “Standard,” which signifies “a statement of required, mandatory, or specifically prohibitive practice regarding a traffic control device.” MUTCD § 1A.13.01.A.
The next difficulty is the definition of “unique” employed by the majority. Not surprisingly, there is no citation for the definition that is provided. Significantly, the word has secondary meanings beyond “one and only,” including “having no like or equal; unparalleled” and “highly unusual, extraordinary, rare, etc.: a common usage still objected to by some.” Webster’s New World Dictionary 1552 (2d College ed.1976). Given that the governing standard provides that “right edge line pavement markings shall consist of a normal solid white line to delineate the right-hand edge of the roadway,” MUTCD § 3B.06.04, the informational supporting statement appears to be the unremarkable observation that such markings are particularly helpful to motorists in foul weather. Not coincidentally, the supporting statement is consistent with “fog line” being favored in the vernacular over “right edge line pavement marking.”
The majority also advances the following analysis:
[O]ne-lane roads also have edges and may be marked with fog lines. It is not a *451 reasonable interpretation to conclude that the legislature would prohibit movement upon the fog line only on multiple-lane roads. If the legislature intended to prohibit driving on top of the fog line, then the statute would also apply to one-lane roads.
I disagree with the majority’s suggestion that there is no rational basis for treating single lane roads differently than multiple-lane roads. A multiple-lane road is designed to permit lines of vehicles[5] to travel parallel to one another, whether abreast or in opposite directions, presumably in order to accommodate substantially greater vehicular traffic than would be found on a single lane roadway. I believe that the legislative interest in requiring motorists to drive in a predictable and orderly fashion upon multiple-lane roadways is evident and rational.
As I am unable to find merit in the justifications advanced by the majority for the conclusion they reach, I respectfully dissent.
Justice EISMANN concurs.

. "Lines,” for purposes of pavement markings, are not continuous. Rather, "lines” may be "solid,” "broken,” or "dotted.” MUTCD § 3A.06.01,02.

. For what it's worth, I don't much like the result of upholding the stop. Doing so appears to affirmatively sanction a stop that borders on pretext. The time that this stop took place strongly suggests that the officer was motivated by something quite different than a desire to enforce Idaho Code section 49-637. However, the determination whether the detention was justified does not turn on the officer’s subjective motivation. Rather, it is an objective inquiry. State v. Schwarz, 133 Idaho 463, 467-68, 988 P.2d 689, 693-94 (1999).

. Idaho Code section 49-121(4) defines "Traffic lane” or "lane of travel" as "that portion of the roadway for movement of a single line of vehicles.”